SYSTEM MEAT COMPANY, A WYOMING CORPORATION, APPELLEE, V. B. M. STEWART ET AL., APPELLEES, RICHARD KEKEISEN ET AL., INTERVENERS-APPELLANTS.
122 N. W. 2d 1

Filed May 31, 1963. No. 35412.

388

Marvin L. Holscher and Malcolm D. Young, for interveners-appellants.

Atkins, Ferguson & Nichols, for appellee System Meat Co.

Wright, Simmons & Hancock, for appellees Stewart et al.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an appeal by interveners from the approval of a settlement agreement between the plaintiff and the defendants. The plaintiff and appellee is the System Meat Company, a Wyoming corporation, hereinafter referred to as plaintiff. The defendants are B. M. Stewart, hereinafter referred to as Stewart; System Investment Corporation of Nebraska, a Nebraska corporation, hereinafter referred to as System of Nebraska; and System Investment Corporation, a California corporation, hereinafter referred to as System Investment Corporation.

The amended petition filed by plaintiff alleges substantially that on or about December 1, 1960, Peter Smith, president of plaintiff, without authority, entered into an oral agreement with Stewart that he would purchase cattle with the funds of the plaintiff and, without consideration, transfer possession and ownership of said cattle to Stewart; and that pursuant thereto, he purchased 729 head of cattle at sales held in Wyoming and Montana; paid for the same with funds of the plaintiff in the amount of $103,144.31, and purported to transfer

said cattle by bill of sale to Stewart. Subsequent to the purchase, the cattle were shipped to Minatare, Nebraska, and at the time of filing of the petition were in possession of the defendant, System of Nebraska, at that point; that a brand owned by System Investment Corporation was placed upon them, and they were mixed with 4,250 other cattle with the same brand; and that it is impossible to separate plaintiff's cattle from the others. It was also alleged that Stewart is the president of both System of Nebraska and System Investment Corporation, and that System Investment Corporation owns all of the stock of System of Nebraska. Plaintiff prayed that the purported bill of sale be declared void; that said cattle be partitioned and sold and the proceeds brought into court to satisfy plaintiff's claim of $103,144.31; for a restraining order; and for other equitable relief. A restraining order was granted.

On March 17, 1961, the district judge found the 729 head of cattle had been commingled with other cattle by defendants, and that a temporary injunction should be granted requiring the defendants to deposit with the clerk of the district court for Scotts Bluff County a proportionate amount of each sale from the 5,000 head of cattle until the sum of $103,144.31 had been deposited.

On May 1, 1961, plaintiff's attorneys, Malcolm D. Young, Atkins and Ferguson, and Clark G. Nichols, were granted leave to file and filed a petition in intervention. The petition alleged that their investigation indicated a conspiracy between Stewart and Smith to defraud plaintiff; that action was brought on behalf of the plaintiff at the request of C. M. Bodensteiner, Smith's successor, as president of plaintiff; that on April 24, 1961, a new board of directors was elected for plaintiff; that one Robert S. Mitchell was elected president succeeding Bodensteiner; and that Mitchell had instructed these attorneys to dismiss the action and had forwarded a resolution of the board of directors directing that the litigation be dismissed. The relief sought was that plaintiff

be prohibited from dismissing the litigation; and that their fees for legal services rendered be determined and the judgment paid out of the funds on hand.

On the same date, May 1, 1961, Leo Bodensteiner and several other stockholders of plaintiff corporation, who will hereinafter be referred to as interveners, were granted leave to file and filed a petition in intervention. They alleged that the new board of directors of the plaintiff was under the influence, domination, and control of Stewart; that Stewart had used his influence to have the president of the corporation removed from office; that Stewart was conspiring with some of the stockholders to have the present case dismissed on terms unfavorable to the plaintiff; and that intervention was necessary to protect the interests of the stockholders. An amended petition in intervention embracing these allegations was subsequently filed by the intervening stockholders who were joined in that petition by several additional stockholders.

At the time of filing the petition in intervention, plaintiff's attorneys also filed a motion for leave to withdraw as counsel. No action appears to have been taken on this motion, and the firm of Atkins and Ferguson and Clark G. Nichols remained in the case representing the plaintiff at subsequent stages. Malcolm D. Young took no further part in the representation of plaintiff, was not notified of or present at the settlement hearing, but did file a motion for a new trial on the approval of the settlement agreement and the dismissal of the petition in intervention.

Stewart, who was served out of the state, filed a special appearance and thereafter filed a demurrer preserving his special appearance. Subsequently, however, he filed several motions requesting affirmative relief, with no attempt to preserve his special appearance. This is not important at this stage of the proceedings and we allude to it only because of plaintiff's suggestion that settlement was advisable because there was a question

as to whether Stewart's special appearance was good.

In Ivaldy v. Ivaldy, 157 Neb. 204, 59 N. W. 2d 373, we held that where a party filing a special appearance thereafter requests affirmative relief, he waives his special appearance from the date of the subsequent pleading.

Defendants filed demurrers to plaintiff's amended petition, but no rulings were ever made thereon. No answers have been filed by any of the defendants. Defendants filed motions attacking the petitions in intervention. These were overruled on September 28, 1961. On October 16, 1961, a stipulation for settlement, signed by Stewart, for the other two defendants by Stewart as president, and for the plaintiff by its then president, Richard H. Shaw, was filed in the district court. This stipulation in substance provided for the settlement of litigation by allowing the defendants setoffs amounting to $47,308.57, and for a judgment against all of the defendants in the principal amount of $55,835.74, plus interest amounting to $3,948 and the costs of the action. It was stipulated that the judgment should be satisfied from the funds impounded with the clerk of the district court, and that the balance of the funds then remaining should be paid to the System Investment Corporation. It was further stipulated that from the amount received by the plaintiff, plaintiff would pay to the Colorado National Bank of Denver such sum as was necessary to make current the note and mortgage to said bank, but not to exceed $35,000. The setoffs provided for by the stipulation represented an amount of $22,108.57, alleged to be due from the plaintiff to System Investment Corporation; the sum of $5,700, representing a loss of cattle which were killed or injured allegedly prior to their delivery to Stewart; and an item of $19,500, representing a judgment obtained by Allbright-Nell against the plaintiff and acquired by the defendant, System Investment Corporation.

At the hearing on October 17, 1961, it was stipulated

that interveners' attorney had received no notice of the settlement agreement until 3 p.m., October 16, 1961, the day it was filed; that at 3:15 p.m., he was notified a hearing would be held in the judge's chambers at 3:30 p.m.; and that he was there at 3:30 p.m., and for the first time saw the agreement. The journal entry is as follows: "NOW on this 16th day of October, 1961, the same being one of the days of the regular October 1961 term of said Court, this matter came on to be heard upon the oral application of the Plaintiff for the approval of the Court of a stipulation entered into by and between the Plaintiff and the Defendants for the settlement of this action. The Plaintiff appearing by its attorney, A. H. Atkins, Defendant by their attorney, Floyd E. Wright and the Interveners, Richard Kekeisen, Carol Kekeisen, George Harper, Adeline Harper, Leo Bodensteiner, Mary Ann Bodensteiner, C. M. Bodensteiner, Tony Amanzio and Paul McCarbilla by their attorney, Marvin Holscher.

"The Interveners having heretofore not been advised of the proposed settlement the matter was continued until October 17, at three o'clock P.M. Ted R. Feidler District Judge."

On October 17, 1961, interveners, by their attorney, filed objections to the stipulation and a motion for a continuance supported by the affidavit of the attorneys. The court overruled the motion for continuance, dismissed the petition in intervention, and approved the stipulation for settlement. Interveners perfected their appeal to this court.

The affidavit suggests the lack of notice; that the attorney had not had time to inform his clients of the stipulation; that it was necessary that he be given sufficient time to complete his investigation and prepare for the hearing; that with reference to the setoff of $22,108.57, many items are set out which indicated that there were meritorious defenses to much of said sum if said items were allowable as a setoff; that with reference to the setoff of $5,700, there was no showing whatever as to

what cattle were killed or injured or the dates involved or the circumstances connected therewith, and that it was impossible to base a determination thereon without further information; and that with reference to the setoff of $19,500 the judgment was in fact purchased by System Investment Corporation for the sum of $17,000, and not $19,500 for which setoff was being asked. There was also included in the affidavit other information as to claims of the plaintiff against Stewart. The affidavit, if true, raised a serious question as to the fairness of the settlement and whether the interests of the stockholders and the corporation were being protected in the settlement.

It is evident from the record that interveners' attorney was required to prepare for a hearing on the stipulation which terminated the litigation in less than 24 hours, and that none of his clients lived closer than 450 miles. The information he was able to obtain had to be obtained from some of them by telephone or telegraph. A trial without time for sufficient preparation to meet the issues raised is a denial of one's day in court. It is hard to understand the urgency which required a hearing without adequate notice if the settlement was as fair as plaintiff and defendants attempt to suggest in their briefs. If interveners were entitled to notice, certainly 24 hours, under the circumstances, were wholly inadequate and the procedure in district court was so summary that it constituted a denial of due process of law to them.

There is no question that the management of corporate litigation is under the direction and control of corporate officials. However, if gross negligence, fraud, or flagrant abuse of discretion is present, courts should interfere to protect the stockholders. The general rule is stated in 13 Am. Jur., Corporations, § 463, p. 507, as follows: "The board of directors of a corporation may, under ordinary circumstances, control an action brought by the corporation and may dismiss it without consulting

the stockholders, and their action is, in ordinary cases, conclusive. The board of directors has no right, however, to dismiss an action through collusion with the defendant." In Royal Highlanders v. Wiseman, 140 Neb. 28, 299 N. W. 459, and Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409, we held that in the absence of usurpation, or fraud, or gross negligence, or transgression of statutory limitations, courts of equity will not interfere at the suit of dissatisfied stockholders merely to overrule the discretion of directors on questions of corporate management, policy, or business. This is not the ordinary case. Its facts put it within the ambit of the exception to the general rule.

Were the interveners entitled to notice? Clearly, plaintiff's attorneys felt intervention was necessary to stop a threatened dismissal and to protect their own fees. Plaintiff, in its statement of the facts, says: "Interveners were permitted to intervene in the law suit to prevent a fraudulent dismissal of the case without a settlement, which was about to be done by a previous president and Board of Directors, * * *." Defendants specifically adopt plaintiff's statement of facts in their brief. There can be little question that unless interveners had been permitted to intervene, there would have been a fraudulent dismissal of the case with the possibility of the dissipation or loss of the funds already sequestered. It is apparent, therefore, that intervention was an actual necessity to prevent a miscarriage of justice.

Plaintiff argues that after interveners were permitted to intervene to prevent a dismissal of the action, there was a change in the personnel of the board of directors and president of plaintiff so intervention is no longer necessary. Even if this were true, interveners cannot be ignored. When they, for sufficient reason, were permitted to intervene, they became parties to the litigation until such time as the court, upon a proper hearing, found it unnecessary for them to participate.

Plaintiff urges that interveners have not exhausted

all available means to obtain relief through the corporation itself. It relies on Kowalski v. Nebraska-Iowa Packing Co., 160 Neb. 609, 71 N. W. 2d 147, in which we held: "A stockholder, before he can proceed in his own name but in behalf of the corporation for the redress of wrongs done to it, must establish that he has exhausted all available means to obtain relief through the corporation itself, unless the circumstances excuse him from so doing. That is a condition precedent."

From what has been said, it is apparent that time was of the essence when interveners were permitted to intervene. Plaintiff contends, however, that sufficient time elapsed after they were permitted to intervene for them to take further action through the corporation. As we view the facts and record in this case, interveners are clearly within the exception noted, and there is no merit to plaintiff's argument.

Under the circumstances presented, the question involved in this appeal is not the fairness of the settlement, but rather whether or not interveners are entitled to their day in court to contest its fairness. Some indication of the need of a full hearing on the settlement agreement is the apparent instability of official tenure in plaintiff corporation. There appear to have been changes in the director personnel connected in some way with this litigation. From the time of the issuance of the bill of sale to the signing of the settlement agreement, a period of 11 months, at least four different individuals acted as president of plaintiff corporation. The previous history of this action and the nature of the settlement should have dictated caution in hurrying through a hearing without proper notice. Interveners should have been given an opportunity to be heard on the merits of the stipulation for settlement. This required a reasonable continuance to prepare for such hearing. The trial court abused its discretion in refusing a reasonable continuance to permit interveners to satisfy themselves as to

the fairness of the proposed settlement or to obtain the evidence to indicate otherwise.

For the reasons stated, the judgment of the district court is hereby reversed and the cause is remanded for further proceedings in conformity with this opinion.

REVERSED AND REMANDED.