Frederick Backer, J.
This is an independent motion by the objectant Samuel Goldwyn made specifically to the jurisdiction of this court more fully discussed hereinafter.
Involved herein are two consolidated stockholders’ derivative actions. The claims asserted are primarily claims of Metropolitan Playhouses, Inc. (hereafter referred to as “Metropolitan ”). The claims of Metropolitan are asserted derivatively by two plaintiffs who are stockholders of Metropolitan. The remaining plaintiff is a stockholder of United Artists Theatre Circuit, Inc. (hereafter referred to as “UATC”) and asserts the same claims “ double derivatively” on behalf of Metropolitan. The basis for this double derivative claim is that UATC in turn is the owner of approximately 62% of Metropolitan’s stock.
The parties entered into a stipulation of settlement of these derivative stockholders’ actions, subject to this court’s approval. Thereafter, pursuant to this court’s order, a Referee was appointed to hear and report on the fairness and adequacy of the settlement. After hearings and proof in respect thereof, the Referee duly filed his report recommending approval of the stipulation of settlement and made his finding and recommendation that the settlement is “ undoubtedly substantial and confers valuable benefits ” and therefore is “in the best interests of UATC, Metropolitan and their public stockholders ”, *650 Pursuant to the further order of this court, the motion to confirm this report came on to be heard before me upon notice to the stockholders of UATO and Metropolitan, which notice included the Referee’s report in full. In response to this notice no Metropolitan stockholder appeared and only one stockholder of UATO appeared on the return day, i.e., Samuel Goldwyn. Goldwyn thereafter filed objections to the motion to confirm on several grounds, one of which was a claimed lack of jurisdiction by this court to entertain this settlement. Subsequently Goldwyn requested leave of the court to interpose and assert his jurisdictional objection by way of a separate motion therefor in opposition to the pending and undecided motion to confirm the Referee’s report.
Plaintiffs, and proponents of the settlement, vigorously object to this procedure by the objectant Goldwyn and contend that his objection as to jurisdiction should be treated not by way of a separate motion, but merely as one ground of his objections in opposition to the presently pending motion for confirmation of the Referee’s report and approval of the settlement herein.
The parties further contend that it is improper for Goldwyn to raise a jurisdictional question separate and apart from the main motion to confirm since the motion to confirm encompasses the question of a jurisdiction and a separate motion, addressed only to that part of the motion to confirm, is not permissible. There does not appear to be any precedent on this point and the court’s independent research has been of no avail in uncovering any authoritative precedent in respect thereof.
Accordingly, and in view of the fact that the motion has been made by the objectant Goldwyn, the court will treat it as a cross motion and pass upon it preliminarily to the main motion.
It is Goldwyn’s specific motion attacking' the jurisdiction of this court with which we are here concerned. None of his other objections are involved nor passed upon on this motion. Voluminous and very able, illuminating briefs have been submitted by the parties and by Goldwyn on this motion. Upon a thorough study of the papers herein, it is my ultimate opinion and conclusion that neither reason nor legal precedent or authority sustains the objectant’s contention that this court has no jurisdiction over this settlement. A somewhat brief statement of the background of the litigation involved here and the nature of the claims is essential to an understanding of the stipulation of settlement.
From both the consolidated amended complaint and the Referee’s comprehensive report, it plainly appears that the interlocking stock ownership, interlocking managements and *651 interlocking business relationships among the corporate defendants are basic to the principal claims asserted (i.e., those in Action Mo. 1). These corporate defendants are TJATC and Metropolitan, the beneficiary corporations, and Skouras Theatres Corporation (hereafter “ Skouras Theatres ”), the principal real defendant. Historically, i.e., as a result of a 1935 Federal bankruptcy reorganization of Metropolitan’s predeeessory and court-approved agreements in connection therewith, UA’TC has at all times owned over 50% of Metropolitan’s outstanding stock. The public has owned a small amount, not exceeding for some years approximately 5%, and the balance has been owned by the Skouras family and, since 1958, by Skouras Theatres as well. In turn, the Skonras family and Metropolitan each own 50% of Skouras Theatres. Thus, in reality, the principal economic interests in Metropolitan and Skouras Theatres have been UATC and the Skouras family. Reflecting this situation, the three corporate defendants have been managed by interlocking officers and directors. With respect to Skouras Theatres, the Skouras family and Metropolitan have, pursuant to agreements and charter provisions originating out of the bankruptcy court, shared the control of Skouras Theatres. These same agreements likewise established the patterns of the business relationships between Metropolitan and Skouras Theatres, i.e., Metropolitan was a landlord leasing theatres to Skouras Theatres (as well as another affiliate), and Skouras Theatres in turn has been the theatre operating company paying rent to Metropolitan.
Plaintiffs’ principal claims in these actions grow out of these relationships and intercompany transactions. Plaintiffs allege with respect to three different types of transaction the existence of a conflict of interest in the Skouras family as the owners of 50% of Skouras Theatres, which led the individual defendants as officers and directors of all three corporations to favor Skouras Theatres. The transactions complained of relate to theatre ventures allegedly either wrongfully taken from, or foisted on, Metropolitan by Skouras Theatres, allegedly wrongful reductions by Metropolitan of the rent payable to it by Skouras Theatres, and unfair apportionments of expenses incident to the sharing of facilities and office premises. In each instance it is alleged that Skouras Theatres, and therefore the Skouras family, was benefited to the disadvantage and damage of Metropolitan and hence HATO and Metropolitan’s public stockholders. Finally, plaintiffs attack a “Plan of Reorganization” entered into among the three corporate defendants and the Skouras family early in 1958. This plan sought the *652 elimination of any stock ownership by the Skonras family in both Skouras Theatres and Metropolitan through the exchange of such stock for UATC. That plan is attacked on the same ground as are the other intercompany transactions, i.e., the interlocking officers and directors permitted an exchange which was unduly favorable to the Skouras family and therefore detrimental to Metropolitan and UATC.
The stipulation of settlement, with which we are now concerned, was entered into in settlement of all of the claims. It contains the usual recitals of the desirability of settlement and, in addition, affirmatively proclaims that one of its purposes is to unify the ownership and operation of the three corporations in the hands of UATC which, in turn, would eliminate the basic conflict of interest inhering in the present stock ownerships. Two main elements are provided for in the stipulation to accomplish these objectives: (1) Skouras Theatres is giving up, and Metropolitan is to receive 56,488.8 shares of Metropolitan’s Class A stock; (2) to eliminate the Skouras family’s ownership in Metropolitan and Skouras Theatres, respectively, the Skouras family is committed to exchange its Metropolitan stock for UATC stock and both Metropolitan and the Skouras family are likewise committed to exchange their shares of Skouras Theatres for UATC stock, with Metropolitan and the Skouras family receiving the same amount of UATC stock. In turn, the few Metropolitan public stockholders are given the same opportunity, if they wish, to exchange their Metropolitan stock for UATC stock. As a result, UATC will become the sole owner of Skouras Theatres and virtually so of Metropolitan with the resulting consolidation and unification of the operations and ownership of Metropolitan and Skouras Theatres by UATC. Though merely an exchange of securities, this aspect of the settlement is referred to as a plan of reorganization so as to come within the applicable Internal Revenue Code provisions and to enable compliance with the stipulation of settlement requirement that a ruling of that agency be obtained making these exchanges tax free. As appears from an affidavit filed by UATC’s counsel, these objectives have been accomplished and, in addition, the receipt of the 56,488.8 shares of Metropolitan has likewise been ruled to be nontaxable to Metropolitan.
The Referee, in recommending approval of the settlement, analyzed both of these aspects of the settlement. He found the payment by Skouras Theatres of the 56,488.8 shares gave a substantial benefit to Metropolitan and hence UATC. The so-called plan likewise, according to the Referee, would confer substantial benefits on Metropolitan, its controlling stockholder UATC, and *653 its public stockholders. These benefits would be tangible and monetary, i.e., operating economies and tax benefits. Additional tangible benefits would result. The plan would eliminate that potential for conflict of interest, which is not only at the root of the present lawsuits but gives indication of breeding future lawsuits with respect to the continuing intercorporate business and transactions among the three corporate defendants. For UATC the plan would be a further step in consummating its long-standing policy of eliminating outside interests in its important operating companies, and itself becoming their sole owner having sole control over them.
It is significant to note here that G-oldwyn’s objection to the jurisdiction is not directed to the entire settlement but only to so much of it as involves the exchange of securities, i.e., the so-called “ Plan of Reorganization ”. No jurisdiction objection is made to any other portion of the settlement, including so much of it as requires Skouras Theatres to give up and Metropolitan to receive the 56,488.8 shares of Metropolitan stock. Gloldwyn’s basic contentions on this motion are as follows: The court’s jurisdiction to entertain a settlement is limited only to settlements which “ directly relate to the matters complained of in the pleadings ’ ’. The settlement must achieve what could be achieved by judgment after trial; it must involve ‘ ‘ a payment ’ ’. Elimination of the underlying conflict of interest and the prevention thereby of future litigation is not, according to G-oldwyn, properly within the scope of a judicial settlement. He argues that the plan, i.e., the exchange of securities, cannot be entertained even though the resulting consolidation and defendants’ consent thereto produce substantial benefits for the beneficiary corporation. Despite lengthy briefs, objectant has been unable to cite a single case in which any of these propositions have been the basis for any court’s rejection of a settlement of a stockholder’s derivative action for lack of jurisdiction. The case of Brill v. Blakely (281 App. Div. 532, affd. 308 N. Y. 951) upon which objectant places great reliance is inapposite and inapplicable here. I shall discuss same more fully hereinafter.
Even if the court were to assume that these arc the jurisdictional requirements established by the cases, the instant settlement would still come within them. At the outset it seems hardly logical and consistent for objectant to concede jurisdiction with respect to the payment of 56,488.8 shares while denying it with respect to the so-called plan. Neither could have been compelled by judgment after trial, and both are achievable only with defendants’ consent. Moreover, this attempt to split the settlement *654 into two parts is likewise unsound. The stipulation presents a single, indivisible settlement. The payment of the 56,488.8 shares by Skouras Theatres and the plan are inseparable parts of one settlement which the defendants agreed to as such and which together, as found by the Referee, confer substantial benefits on Metropolitan, its controlling stockholder TJATC, and its small public stock interests. This court’s jurisdiction, therefore, must be tested on the basis of the settlement as an entirety. Nonetheless, even if separately viewed, the plan does meet objectant’s claimed requirement that it be directly related to matters complained of in the pleadings. The pleadings before the court have at all times put in issue an attack on a prior similar plan to accomplish the same purposes through a similar exchange of securities.
They show that in March of 1958 Metropolitan entered into an agreement with the Skouras Theatres to purchase all of the Class A Stock of Skouras Theatres consisting of 50% of its issued stock in exchange for shares of a proposed new $5 preferred stock of Metropolitan. This agreement required the approval of the stockholders of Metropolitan. In April, 1958, the stockholders of Metropolitan approved the agreement between Metropolitan and Skouras. It was understood that when the transfer of the stock between Metropolitan and Skouras was effectuated that the new preferred stock of Metropolitan would be exchanged for United’s common stock. Thus, there was to be effectuated as of April, 1958 a reorganization plan. The mechanics of that plan requiring the creation and issuance of a new class of preferred stock of Metropolitan therefore required amendment of Metropolitan’s charter by a stockholder action. Accordingly, a notice, dated March 6, 1958, was sent out for a .special meeting of the stockholders of Metropolitan called for March 18, 1958. On the heels of this notice came a stockholders’ derivative action by one of the plaintiffs herein, one month later. It appears that the submission of this plan was the precipitant for the lawsuits. The plan was attacked in the original complaints in each of the instant actions (together with other transactions among the three interlocking corporations). The answers of the defendants denied all charges of wrongdoing including the charges concerning the plan. Thereafter, the consolidated amended complaint served in the Levey action on March 5, 1959 likewise complained of the plan. It repeated the allegations that the plan of reorganization was a waste, a fraud and a gift of the assets of both United and Metropolitan perpetrated by the individual defendants and Skouras Theatres for the benefit of the Skouras family, and pleaded that *655 Metropolitan’s stockholders had approved it. The prayer for judgment in the consolidated amended complaint requesting judgment enjoining its consummation and rescinding the plan asked for the following relief:
“ 1. Enjoining the transfer of the stock of Metropolitan or any part thereof in exchange for the Class A Stock of Skouras Theatres.
“ 2. Enjoining the transfer of the stock of United or any part thereof in exchange for the 111,329 shares of the $5.00 Preferred Stock of Metropolitan.
“ 3. That the reorganization between Skouras Theatres and Metropolitan be rescinded and declared null and void and that defendants be directed to return to Metropolitan any stock issued in exchange for the stock of Skouras Theatres.
“4. That the reorganization between United, Metropolitan and Skouras Theatres be rescinded and declared null and void and that the defendants be directed to return any stock of United issued in exchange for any of the new $5.00 Preferred Stock of Metropolitan.
“ 5. That any contract entered into between Metropolitan and the Skouras group or United and the Skouras group be rescinded and be declared null and void and that any consideration issued for said contract or contracts be returned to Metropolitan and United respectively.”
The defendants’ answer to this complaint put these charges, inter alia, in issue by denying all claims of wrongdoing and requested dismissal of the complaint on the merits. The pleadings herein have never been amended and are the pleadings still before the court. These pleadings, therefore, confer jurisdiction on this court to entertain as a part of a settlement a new plan. The pleadings, having never been amended, this court has never been divested of this jurisdiction, and the fact that the parties subsequently did not consummate, or even drop, the old plan — a frequent consequence of stockholder litigation attacking it — could not operate to divest the court of that jurisdiction. In an even more significant respect, the plan responds to the basic issues posed by the lawsuits, namely, the alleged underlying conflict of interest flowing from the Skouras family’s ownership of 50% of defendant Skouras Theatres and the claim that in the intercorporate transactions this economic interest of the Skouras family has been served, to the detriment of Metropolitan and UATC. The settlement, via the plan, eliminates this litigation-breeding situation thereby preventing similar, future lawsuits and similar charges with respect to the close business relations which of necessity must continue among the *656 three corporate defendants. Elimination of this conflict is certainly a matter of concern to all the parties to the suit. It is a matter of concern to plaintiffs and their fellow stockholders because of their charges that UATC and Metropolitan have already been injured thereby, and because of their apprehension that if this situation continues, further injury would eventuate. All other parties, including the beneficiary corporation, are likewise concerned because future intercompany transactions would be subject to shareholders’ complaints and possible burdensome and vexatious lawsuits. Elimination of this condition is certainly something which any court should not only regard with favor but should urge as a part of any settlement. Manifestly, therefore, the present settlement, which would eliminate the claimed conflicting self-interest of the Skouras family once and for all is, therefore, significantly responsive to a basic issue in these lawsuits.
It is on the basis of these pleadings that objectant Goldwyn’s motion is bottomed. His claim that this court lacks jurisdiction to entertain the proposed plan because the settlement proposal is not related to the claim in the consolidated complaint, is negated and disproved by the very allegations which are contained in the complaint as hereinbefore stated. From 1958 to date, the complaints herein have attacked the reorganization plan and have sought judgment to prevent its consummation. No judicial disposition of these issues has ever been made. The court has not been divested of its jurisdiction and still retains its jurisdiction to dispose of that attack in the pleadings which are before the court. This jurisdiction has always been entertained by the courts and held' to include the right to consider for approval, as fair and reasonable, a settlement which would include a new plan to accomplish the same result. Numerous authorities support this conclusion, as hereinafter discussed.
Thus, even if objectant’s narrow view of this court’s jurisdiction were the law, the present settlement comes within his claimed requirements. Nevertheless, the cases in my opinion are contrary to and negate objectant’s contentions. In numerous stockholders’ derivative actions the courts have entertained and approved settlements conferring benefits not achievable by judgment, not responsive to the pleadings, but designed not only to clear up past wrongdoings, but to eliminate conflicts of interest and to provide prophylaxis against future wrongdoing and litigation. The methods by which these objectives have been achieved in such settlements have been many and varied. Thus, stockholders’ derivative actions have been settled by an exchange of securities through various permissible corporate *657 devices. (See Corash v. Texas Corp., N. Y. L. J., March 2, 1943, p. 830, col. 6 [Supreme Ct., N. Y. County, Valente, J.]; Rosenak v. Lucas, Supreme Ct., N. Y. County, 1947 [Index No. 27467/ 1956]; Posen v. Cowdin, N. Y. L. J., June 3, 1943, p. 2164, col. 6 [Supreme Ct., N. Y. County, Collins, J.].)
In the Corash case (supra) plaintiffs, as stockholders of Indian Refining Company, brought a derivative action against Texas Corporation, owning 91% of Indian stock. They charged Texas with various breaches of fiduciary duty including diversion of corporate opportunities, overreaching, etc. The court-approved settlement was in effect a merger of the two companies via a purchase by Texas of Indian’s assets for Texas stock which, in turn, was distributed to Indian’s stockholders. By this method not only were the past claims settled but, in addition, Texas’ conflict of interest as a dominant stockholder was eliminated and the possibility of future charges of overreaching and future litigation with respect to the relationship between the two companies were likewise eliminated. The court approved the settlement and recognized, as an important benefit, that it would ‘1 effect the desirable end of terminating future possibility of litigations and disputes between Texas and Indian ”.
In Rosenak, a stockholders’ derivative action on behalf of Diamond Match Company, the wrongs complained of flowed from the ownership by its president of 51% of a corporation, of which Diamond Match owned 49%. These charges included claims of overreaching for the benefit of the 51% owned company in transactions between that company and Diamond M atch. As- in the instant case, the basis for the action was the claimed conflict of interest resulting from this position of the president of Diamond Match. The settlement, though slightly different in form, again eliminated this conflict of interest by an exchange of shares, with the result that Diamond Match acquired its president’s 51%.
Similarly, in the Posen case, charges of overreaching including the wrongful taking of corporate opportunities were alleged against the dominant stockholder of Universal Pictures Company. There, too, the settlement not only discharged past claims but took the form which would eliminate the conflicts of interests basic to the ivrongs complained of. The approved settlement provided for a merger of the two corporations.
The above cases are analogous to the instant case. Despite the differences in mechanics, these settlements are all directed not only to the past but to eliminating, for the future, the conflicts of interest which gave rise to the lawsuits. The courts have not been deterred from entertaining and approving those *658 settlements, even though the pleadings did not attack a prior plan and the settlement could not possibly have been achieved by way of judgment. Nor were the courts deterred in those cases because the settlements required not only the usual evaluation of the settlement but also evaluation of the fairness, of the exchanges of securities embodied in the settlement, on' the basis of evidence as to earnings, assets and similar proof. As in the instant case, the courts made such determinations only after all stockholders were afforded an opportunity to be heard, including the right to present appropriate evidence. It is manifest that the courts have assumed the natural existence of power in a derivative stockholders’ suit to approve and implement a full-scale corporate reorganization and merger entirely without the limits of the scope of the respective pleadings in order to promote corporate peace and advantage to the stockholders over a far wider area than presented by the narrow issues before it. A most recent illustration of this process is Lieferant v. Bartell (36 Misc 2d 477), where a plan was attacked, then settled but disapproved and finally settled by a further amended judicially approved plan.
As established by the afore-cited cases, there is therefore the power in this court, in the case at bar, to entertain not only so much of the instant settlement, as calls for payment by the principal defendant, Skouras Theatres, of valuable shares • of stock, but also the plan which, by an exchange of securities, responds to plaintiffs’ basic charge — the existence of a conflict of interest — by eliminating it and thereby preventing similar future charges and future litigation.
This conclusion is strongly supported by a recent decision of the Appellate Division in Armstrong v. Doyle (16 A D 2d 916 [1st Dept., 1962], affg. with slight modification N. Y. L. J., July 27, 1961, p. 5, col. 5, Greenbeeg, J.). There plaintiff brought a stockholder’s derivative action charging the corporation’s chief executive and dominant stockholder with a variety of breaches of fiduciary duty. The Appellate Division approved a settlement which, in addition to giving the corporation monetary benefits, also imposed these conditions: (1) that the- corporation employ, in a senior position, a responsible outside executive experienced in the mining business; (2) that the" corporation employ a firm of auditors acceptable to the court and “ the head of government of the Province of Newfoundland” to make periodic examinations and quarterly audits; and (3) the election of three independent directors with specific qualifications, proposed by shareholders and likewise approved by the court and the head of the government.
*659 Obviously these conditions could not have been achieved by judgment of the court after trial. Nor were they the subject matter of any claims in the complaint. These conditions were embodied in the settlement in an effort to prevent a continuation of the misconduct alleged in the lawsuits and consequently to make less likely future litigation burdensome to the corporation and its stockholders. Though less surgical in consequence than the case heretofore discussed (and the settlement in this case), these provisions were designed to ameliorate, if not eliminate, the consequences of the conflict of interest on the part of the principal defendant. That these provisions were regarded as significant and important, is evidenced by the following quotation from the opinion at Special Term, per Greenberg, J.: “Aside the monetary considerations accruing to Javelin [the Corporation] the provision for additional membership on the board of directors under court selection, and the tightening of controls is even more vital and beneficial to Javelin and its stockholders ” (p. 6, col. 2). As has previously been stated, the Referee in the instant case likewise has stressed the importance of the elimination of that conflict of interest which is the basis for the instant lawsuit and could well breed similar future litigation.
Numerous other cases could be cited to evidence the power of a court in a stockholder’s derivative action to entertain a settlement which is unrelated to the pleadings and not achievable by judgment after trial, e.g., Masterson v. Pergament (203 F. 2d 315, 330 [C. A. 6th, 1953], cert. denied 346 U. S. 832); Pearson v. Prospect Hill Apts. (19 Misc 2d 51), as well as other cases in which the entire settlement takes the form of altering in futuro contractual relationships, such as, employment agreements, management contracts, etc.,
On the other hand, objectant’s principal reliance is on one case: Brill v. Blakely (281 App. Div. 532 [1st Dept., 1953], affd. 308 N. Y. 951), from which he derives his contentions heretofore summarized. However, neither the holding nor- the language of that case is applicable to a stockholder’s derivative action. If it were, the instant settlement would still come within it. There a settlement was rejected for lack of jurisdiction, but the action was a stockholder’s representative, action — not a stockholder’s derivative action. The Appellate Division in its opinion emphasized and underlined the importance of this distinction by the very first sentence of its opinion wherein it discussed the question of jurisdiction as follows and made this statement (p. 537): “As to the first question of jurisdiction, it is to be remembered that the actions are representative and not deri *660 votive.” (Emphasis supplied.) Thereafter the court further emphasizes the special nature of a representative action (p. 537): ‘ ‘ The right to bring a representative action arises from necessity where the parties are too numerous to be joined. (Civ. Prae. Act, § 195.) The theory of representation is one of implied agency. The extent of such an agency Avould be limited, we think, by the assumption that a suit would proceed to its ordinary ends, not to ends which a stockholder advised of the bringing of the action never could anticipate ’ ’. The inapplicability of this language to a stockholder’s derivative action is clear. The stockholder’s right derives from the corporation, and does not arise from necessity because of numerous parties. As the courts have aptly stated, the plaintiff stockholder is merely the ‘ ‘ instigator ” to place the corporation’s rights and claims before the court, and not the individual rights of numerous stockholders (Chaplin v. Selznick, 293 N. Y. 529, 532; Carruthers v. Waite Mining Co., 306 N. Y. 136, 140). The right to bring a derivative action, asserting the corporation’s claims, arises from the claimed disability of the directors because of lack of independence or otherwise to do so. It does not arise, as in a representative action, from any legal fiction of implied agency for a class too numerous to assert individual rights individually. In a derivative action the corporation is an indispensable party and therefore its rights and best interests are before the court as a party — a situation completely different from the agency bestowed on a plaintiff in a representative action limited to his pleadings. The importance of the corporations being before the court is evidenced by the fact that the corporation itself could submit for judicial approval its own settlement even over the objection of the plaintiff stockholder (Denicke v. Anglo California Nat. Bank, 141 F. 2d 285, 288 [C. C. A. 9th, 1944]). Thus, even though the action be instigated by a stockholder, the court has before it the corporation’s rights, for trial or settlement — and not, as in a stockholder’s representative action, the individual rights of stockholders asserted by a limited agent acting for persons too numerous to present their individual rights separately. These distinctions between derivative and representative actions were undoubtedly the basis for the Appellate Division’s expressly stated reminder that the actions in the Brill case (supra) were “ representative and not derivative ”. This conAÚction is re-enforced by the Appellate Division’s recent affirmance of the settlement in Armstrong v. Doyle (16 A D 2d 916, supra). The conditions of the settlement which the court there approved in a derivative action were not obtainable by-judgment after trial, Avere not one of the results foreshadowed by the *661 pleadings, and were not one of the 1 ‘ ordinary ends ’ ’ of such a lawsuit, and therefore, could not have been approved if Brill v. Blakely (supra) were applicable to stockholders’ derivative actions. In the one case citing Brill v. Blakely, the court, in approving a settlement of a stockholder’s derivative action, likewise limited the impact of the Brill case to representative actions (Pearson v. Prospect Hill Apts., 19 Misc 2d 51, supra).
Even if the Brill case were extended to stockholders’ derivative actions, jurisdiction would exist over the instant settlement. As has previously been shown, the settlement herein is responsive to the pleadings. The so-called plan is similar in design and purpose to the plan attacked in extenso in plaintiffs’ complaint and, therefore, unlike the Brill case, a new plan by way of settlement could have been anticipated as an “ ordinary end ’ ’ of this case by any stockholder reading the complaint; the settlement further responds to the basic issues in the action — by eliminating the basic conflict of interest affecting past and continuing intercorporate transactions. Nor does the instant settlement dispose of individual property rights of stockholders as in the Brill case. No pre-emptive rights, appraisal rights, or other individual rights of stockholders are altered or disposed of. Neither the objectant, his fellow UATC stockholders, nor the public Metropolitan stockholders are required to exchange or otherwise alter their existing shares. Nor is the approval of such stockholders required since, admittedly, the boards of both UATC and Metropolitan can accomplish the plan and exchanges of securities without such approval.
I conclude, therefore, that the Brill case does not require the granting of objectant’s motion, as he argues. In resolving this issue of jurisdiction, this court has been mindful of broad questions of policy posed by it. The judicial policy from time immemorial has been to encourage compromise and settlement and to prevent multiplicity. This policy should be, and undoubtedly has been, broadly and liberally exercised. This should be particularly so in the settlement of stockholders’ derivative actions. Such settlements, though made by the parties, almost invariably require, as does the instant settlement, judicial approval as fair and reasonable. In the exercise of this significant power, our courts have subjected such settlements to careful scrutiny, have afforded absent stockholders full and adequate notice and an opportunity to be heard on the settlement, and only then have approved or rejected the proffered settlement. With such judicial protections available and exercised, it is understandable that our courts should and, as the cases show, do have broad jurisdiction and power to entertain settlements in whatever *662 form or mechanics employed and to subject them to its scrutiny. That such settlements may take many varied and different forms is to be expected since they occur in cases which involve complex corporate relationships and claims, the resolution of which may in turn involve difficult business, tax and other related problems. Moreover, the court is mindful of the fact that settlements of stockholders’ derivative actions primarily concern the corporation on whose behalf the action is brought by the plaintiff “ instigator ”. It is well recognized that only if such settlement is in the corporation’s best interests will it be approved. In effect, therefore, the court in approving such settlement is the guardian of the corporation’s interests sitting, as it were, in lieu of an independent board of directors (Winkelman v. General Motors Corp., 44 F. Supp. 960 [S. D. N. Y., 1942]). 'There is, therefore, need to afford in the interests of the corporation, the opportunity to formulate and submit a settlement in a derivative action which the corporation, if managed by an independent board, could and would reasonably have adopted, There is no need at this time to define what, if any, limitations a court might impose on itself with respect to any particular settlement. Suffice it to say that the instant case does not call for the imposition -of any such limitation on this court’s power to entertain the settlement herein. The settlement here proposed is one which appropriately addresses itself to the lawsuits and accomplishes their settlement in a fashion reasonably consonant with the necessities flowing from the intercorporate relationships and the business and other problems posed thereby. These comments are in no way directed to whether the settlement is fair and reasonable — an issue which will be resolved upon my determination ultimately with respect to the presently pending, undetermined motion to confirm the Referee’s report.
Objectant Goldwyn’s cross motion to reject the settlement and refuse its confirmation on the ground that the court lacks jurisdiction is therefore denied. Accordingly, in light of this disposition on the jurisdictional objection, the motion in chief, to confirm the settlement of these actions will be held in abeyance. The matter is sent back to the Referee herein, to hear and report together with his recommendations on the grounds contained in the filed objections of Samuel Goldwyn (other than the jurisdictional objection) and to proceed expeditiously. This is the decision and the order of the court.