SYSTEM MEAT COMPANY, A WYOMING CORPORATION, APPELLEE, V. B. M. STEWART ET AL., APPELLEES, RICHARD KEKEISEN ET AL., INTERVENERS-APPELLANTS.

163 N. W. 2d 789

Filed January 10, 1969. No. 36984.

Malcolm D. Young and Marvin L. Holscher, for interveners-appellants.

Atkins, Ferguson & Nichols, for appellee System Meat Co.

Wright, Simmons & Hancock, for appellees Stewart et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and SCHMIDT, District Judge.

SMITH, J.

The district court approved an agreement for settlement made by defendants and plaintiff over objections of intervening stockholders of plaintiff. The question on appeal by objectants is whether the agreeement was fair.

Plaintiff, a packinghouse corporation, commenced this suit, claiming that a transaction between its former president Peter F. Smith and defendant B. M. Stewart was fraudulent. Plaintiff implicated defendant System Investment Corporation, "SIC," and System Investment Corporation of Nebraska, "SICN," both of which were controlled by their majority stockholder, Stewart. Smith had purchased 729 head of cattle with funds of plaintiff. At the time of suit in February 1961 the animals were commingled with 4,200 head of cattle owned by defendants. Under an order for protection of plaintiff during pendency of suit, defendants paid specified proportions of proceeds from cattle sales into court.

Objectants intervened May 1, 1961, to prevent voluntary dismissal of plaintiff's claim. On October 16, 1961, plaintiff and defendants filed the settlement agreement, and the next day the district court approved. Objectants appealed. We reversed the judgment because the hasty hearing had deprived objectants of reasonable opportunity to try the issue of fairness. System Meat Co. v. Stewart, 175 Neb. 387, 122 N. W. 2d 1.

Plaintiff did not participate in proceedings on remand. Objectants and defendants at a pretrial conference January 20, 1966, agreed that the only issue was whether the proposed settlement was fair. On motion of objectants the district court ordered production of (1) books of account, canceled checks, and minutes of corporation meetings of plaintiff, and (2) all other business records pertaining to items of claims set forth in the settlement agreement. No one complied, and no evidence condoned noncompliance. The court held evidentiary hearings on the issue of fairness on April 7, 1966, and on November

21, 1967; and on March 8, 1968, it approved the agreement. The court found that the agreement fairly provided for reasonable settlement of all controversies between the parties. It concluded that objectants had no right to vacation of the 1961 judgment which it "reinstated."

The settlement agreement was contingent upon court approval on or before October 19, 1961. It set forth one claim of plaintiff for $103,144.31 and many items of setoff for $47,308.57. All were to be allowed in full. Plaintiff was to take judgment for $55,835.74 besides costs and $3,948 interest. The judgment was to be satisfied out of the proceeds in registry of court, and any balance was to be paid to SIC. During the pendency of the first appeal plaintiff and defendants received all the proceeds in registry of court in accordance with the settlement agreement. The judgment of October 19, 1961, had not been superseded.

No room existed for controversy over fairness of the amount claimed by plaintiff. Smith had purchased 729 head of cattle for $103,144.31 with company funds. He fraudulently executed and delivered to Stewart a bill of sale for the animals under date of December 2, 1960.

One item of the setoff was $5,700 for damage on November 29, 1960, to cattle described in the bill of sale from Smith to Stewart. The damages had occurred while W. J. Digby was transporting the animals in his trailer to SIC. Assignment of the claim under the agreement was made to plaintiff by Keith Williams, a lawyer and executive vice president of SIC and SICN. He conceded that plaintiff had not been at fault. A letter from him to Digby May 8, 1961, in regard to the loss reads:

"Find enclosed duplicate invoice in the amount of $4,490.00 for our livestock loss when your trailer deck collapsed. * * * this invoice has gone a great length of time and I know of no reason whatsoever why it isn't taken care of. * * * We would like to get our affairs with * * * (plaintiff) settled up and these cattle were orig-

inally involved. However, this claim and our loss resulting therefrom has nothing whatsoever to do with * * * (plaintiff) and it is way over due. Please, therefore, let us have your remittance by return mail."

Another item of setoff was $19,500, the amount of a judgment against plaintiff in an action for replevin of packinghouse equipment. The judgment had been assigned August 23, 1961, to Stewart for $17,000 and his assumption of "responsibility for * * * maintenance * * * of the equipment, formerly the responsibility of * * * (assignor)." The quotation is unexplained. A letter from Stewart April 1, 1966, concerning the assignment reads: "This purchase was made at a very substantial discount—but we only charged * * * (plaintiff) the exact amount of funds, not even including interest."

Other business relations are pertinent. Plaintiff in June 1959 shortly after incorporation began building a meat packing plant near Newcastle, Wyoming, at an estimated total cost of $450,000. Plaintiff borrowed $225,000 April 29, 1960, from the Colorado National Bank of Denver, giving a mortgage on the plant and the land. About June 1, 1960, a public offering by plaintiff of 150,000 shares of common stock for $750,000 was underwritten by Purvis & Company. The controlling stockholders of the underwriter, Nathan R. Kobey and Robert S. Mitchell, were law partners and general counsel to plaintiff. Kobey was secretary-treasurer of SIC and SICN, and he represented Stewart.

The setoff included $5,000 for cash advance and $2,801.08 for travel expenses of Stewart, Williams, Kobey, Mitchell, and three others. Plaintiff had paid similar charges of SIC in excess of $11,000, but the transactions went unmentioned in the agreement. One item was $2,500 for cash advance to Smith.

Plaintiff's preliminary prospectus dated June 1, 1960, stated the following opinions of management: (1) A packing plant near the source of supply had a competitive advantage. (2) Ranchers shipping live animals long

distances incurred substantial losses from transportation costs and shrinkage. Management recommended minimum working capital of $250,000. Whatever amount was anticipated and needed, it was not raised. Plaintiff's plant operated from September 1960 to February 4, 1961, when it closed.

Stewart was a man of property. On May 20, 1960, he owned 7,200 shares of common stock in plaintiff, having purchased them for $36,000. He guaranteed the mortgage note to the Colorado bank, and he pledged collateral security for his promise. He deposited bonds with Purvis & Company to secure issuance of the underwriting. L. A. K. Ranch, which was well known, was owned by SIC.

Smith and Stewart on December 2, 1960, the date of the bill of sale, signed a curious agreement. The securities pledged by Stewart to the Colorado bank were to be returned free and clear to him no later than December 27, 1960. In event of nonperformance the entire balance on the mortgage note of plaintiff to the bank would fall due immediately. They also agreed that upon return of the bonds on deposit with Purvis & Company to Stewart he would pay plaintiff $103,144.31.

The Colorado bank in March 1964 assigned the note and mortgage to SIC for $107,765.28. SIC took default judgment in January 1966 for $100,000 plus $38,000 accrued interest and $5,000 attorney's fees. At sale on foreclosure in February SIC purchased plaintiff's plant and land for $50,000. The plant and land lay adjacent to L. A. K. Ranch.

The evidence of investigation and negotiation leading up to the settlement agreement is vague and the absence of business records, remarkable. No one except objectants investigated whether plaintiff had claims based on transactions other than the bill of sale. The settlement agreement was signed by Richard Shaw, a lawyer and president of plaintiff in October 1961, with approval of counsel. Shaw's independence of Stewart was estab-

lished. Shaw knew nothing, however, from which a trier of fact might reasonably estimate probability of success in litigation of the setoff. The financial future of plaintiff appeared bleak to Shaw unless management recovered assets quickly.

The general standard relating to court approval of a proposed settlement by a corporation is fairness in the best interests of the corporation. Elements to be considered include (1) nature of the claim proposed for settlement, (2) probability of success in event of litigation of the claim, and (3) reasonableness of the business judgment exercised by the board of directors. See System Meat Co. v. Stewart, *supra.* See, also, Winkelman v. General Motors Corp., 48 F. Supp. 490; Schleiff v. Chesapeake & Ohio Ry. Co., 43 F. R. D. 175; Krinsky v. Helfand, 38 Del. Ch. 553, 156 A. 2d 90; Levey v. Babb, 39 Misc. 2d 648, 241 N. Y. S. 2d 642; Note, 54 Harv. L. Rev. 833.

The nonparticipation of plaintiff in proceedings on remand may have affected control. See Note, 63 Harv. L. Rev. 1426. The possibility is not argued, and we attempt no analysis. We also decline to pass on the reasonableness of business judgment exercised on behalf of plaintiff in October 1961. Conditions then and later were strikingly dissimilar. The location of fairness or unfairness in time is March 8, 1968, when the district court approved. We are persuaded that the settlement agreement was unfair.

The judgment is reversed and the cause remanded with directions to dismiss the application for approval of the settlement agreement.

REVERSED AND REMANDED WITH DIRECTIONS.