Marvin M. GOLDSTEIN and Betty J. Goldstein, in the Right of and for the Benefit of Missouri Machinery and Engineering Company, a Missouri Corporation, and Marvin M. Goldstein and Betty J. Goldstein, Individually, Plaintiffs-Appellants,

v.

James M. STUDLEY and Eileen C. Studley, Defendants-Respondents.

No. 54436.

Supreme Court of Missouri, Division No. 1.

March 9, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied April 13, 1970.

Arthur H. Slonim, Slonim & Ross, Clayton and Michael J. Yatkeman, St. Louis, for plaintiffs-appellants.

Gershenson & Gershenson, Harry Gershenson and Harry Gershenson, Jr., St. Louis, for defendants-respondents.

JOHN R. RICKHOFF, Special Judge.

This is a shareholders' derivative action in equity in two counts. The first count seeks liquidation of the corporation, Missouri Machinery and Engineering Co., and appointment of a liquidating receiver pursuant to § 351.490 [1]. The second count seeks money damages for the corporation in the amount of $39,000.00 for salaries allegedly wrongfully paid defendants by the corporation.

Defendants filed a cross-bill praying that an accountant be appointed by the court to determine the state of the corporation's business and records, that an appraiser be appointed to appraise the assets and inventory of the business, and that the court appoint someone to collect the outstanding delinquent accounts of the corporation.

The trial court rendered judgment in favor of defendants on both counts of plaintiffs' petition and in favor of plaintiffs on defendants' cross-bill. Plaintiffs filed a motion for new trial, which was overruled, and plaintiffs filed their appeal to this court. Defendants did not file a motion for new trial on the cross-bill and did not appeal from the ruling of the trial court. The value of the business sought to be liquidated by Count One of plaintiffs' petition was found by the trial court to be $80,000.00, and the damages sought in Count Two were $39,000.00. Jurisdiction is therefore vested in this court.

The plaintiffs, in their motion for new trial, did not complain of error in the trial court's dismissal of Count Two of plaintiffs' petition, nor was any issue relating to Count Two briefed or argued on this appeal. The propriety of the trial court's ruling on Count Two of plaintiffs' petition is therefore not before this court and is not here considered.

The trial court ruled that there had been a failure to comply with Civil Rule 52.01, V.A.M.R. This ruling was apparently made upon the basis of the fact that the corporation had not authorized the institution of the suit.

The suit was brought by Marvin M. Goldstein and Betty J. Goldstein, individually, and also "in the right of and for the benefit of" the corporation, as a shareholders' secondary or derivative action authorized, in proper circumstances, by Civil Rule 52.08(b).

I. Statutory references are to RSMo 1959, V.A.M.S.

Pertinent to compliance with the requirements of Rule 52.08(b), the petition in this suit states that the plaintiffs "are and were at all times mentioned herein * * * holders of one-half of the issued and outstanding shares of capital stock of Missouri Machinery and Engineering Co., a Missouri corporation * * *." The petition further alleges:

"3. That on or about November 20, 1967, special meetings of the Directors and Shareholders of said corporation were held at 918 South 4th Street, St. Louis, Missouri, for the purpose of considering and voting upon the following proposals which were thereupon duly submitted at said meetings, to-wit:

"(a) To terminate the corporate employment, salary and compensation of said JAMES M. STUDLEY;

"(b) To effect a voluntary dissolution and liquidation of the corporation in accordance with the pertinent provisions of the laws of the State of Missouri;

"(c) To remove the said JAMES M. STUDLEY and EILLEEN C. STUDLEY as Directors of the corporation;

"(d) That all of said proposals were duly submitted as resolutions at said special Shareholders' meeting and at said special Directors' meeting; and that all of said resolutions were voted upon affirmatively by Plaintiffs and negatively by Defendants, and thus failed to pass and to be adopted by reason of said even deadlocked vote."

The undisputed evidence at the trial amply sustained these allegations. Missouri Machinery and Engineering Co. was incorporated in 1957. The plaintiffs Marvin J. Goldstein and his wife own 125 shares of the stock of the corporation, which constitutes one-half of the shares issued and outstanding. They acquired these shares in 1958. The other 125 shares are owned by the defendants, James M. Studley and his wife who had acquired them prior to the time the Goldsteins became shareholders. These four individuals, Marvin J. Goldstein and his wife and James M. Studley and his wife, constitute the entire Board of Directors of the corporation. James M. Studley is president of the company and his wife, Eilleen C. Studley, is vice-president. Marvin M. Goldstein is secretary of the corporation and his wife, Betty J. Goldstein, is treasurer. Thus, the ownership of the shares, the directorships, and the offices are evenly balanced between the two contending families.

Since 1960, only one corporate meeting, a joint meeting of shareholders and directors at which the only business transacted was the election of directors and officers, was held in November 1967. At that time the plaintiffs gave defendants written notice of a special meeting of directors. All of the parties and their counsel appeared at the time and place designated in the notice, but defendants protested that there was no legal meeting because it had not been called by the president, Mr. Studley, as required by the bylaws of the corporation. Marvin Goldstein was nominated to be chairman of the meeting, but the vote was evenly divided and no chairman was elected. Resolutions were offered for termination of Mr. Studley's employment and for dissolution of the corporation, and on each resolution the vote was evenly divided. The only action on which there was any agreement was a motion to adjourn.

Plaintiffs had also given notice of a shareholders' meeting to be held immediately after the directors' meeting. All of the parties and their counsel were present, and again they were unable to elect a chairman. Defendants stated that the meeting could not proceed without a chairman and they refused to participate further. The shareholders then departed without having transacted any business.

Although the defendants disputed the legality of the actions which were attempted by the calling of the meetings of directors and of shareholders in November

1967, there was no dispute that the actions related did occur, whatever the legal effect may have been. Plaintiffs did call, or attempt to call, a meeting of the directors. The directors did meet, and the propositions described in paragraph 3 of Count One of plaintiffs' petition were submitted and voted on by the directors. The result of each vote was a two-two deadlock. Whether or not the shareholders' meeting was legally called, all of the shareholders of the corporation were in fact present and attempted to commence a meeting by electing a chairman. They were unable to do so, again because of a two-two deadlock, and defendants refused to participate in any further business.

Before a court will entertain a derivative action and inquire into wrongs complained of by a shareholder, the shareholder must show that he has exhausted all remedies and reasonable efforts within the corporation. Bailey v. State Farmers Mut. Cas. Co., Mo.App., 377 S.W.2d 485; Saigh ex rel. Anheuser-Busch, Inc. v. Busch, Mo.App., 396 S.W.2d 9. We hold that plaintiffs met those requirements both by the averments in the petition and by the evidence. It might well be argued that in a situation where both the directors and shareholders of a corporation are evenly balanced and at odds, corporate action of any kind unacceptable to either side will be impossible and that to seek such action would be merely a futile act. In this case, however, plaintiffs have no need to rely on that argument since they did perform the futile act and did make every attempt possible within the corporate framework to obtain the desired action by the corporation.

In any event, § 351.485(1) authorizes the institution of a suit by shareholders for dissolution of a corporation upon the grounds alleged in plaintiffs' petition so that the shareholders individually, in their capacity as shareholders, were proper parties plaintiff. Establishment of the plaintiffs' derivative right was necessary to maintenance of the cause of action alleged in Count Two, this being a cause of action owned by the corporation and not by the shareholders. We have held that the plaintiffs did establish their right to maintain a derivative action, although we have also stated that the issue of error in the trial court's ruling on Count Two is not before this court. However, a derivative action is in legal effect a suit by the corporation conducted by the shareholders as the corporation's representative. The shareholder is only a nominal plaintiff, and the corporation is the real party in interest. Saigh ex rel. Anheuser-Busch, Inc., v. Busch, Mo. App., 396 S.W.2d 9, 16; Fletcher, Cyclopedia Corporations, Vol. 13, § 5939; 19 Am. Jur.2d Corporations, § 528, p. 64; James Talcott, Inc. v. McDowell (Fla.App.), 148 So.2d 36. "As the courts have aptly stated, the plaintiff stockholder is merely the 'instigator' to place the *corporation's* rights and claims before the court, and not the *individual* rights of numerous stockholders. * * * In a derivative action the corporation is an indispensable party and therefore its rights and best interests are before the court as a party—a situation completely different from the agency bestowed on a plaintiff in a representative action limited to his pleadings. * * *" Levey v. Babb, 39 Misc.2d 648, 241 N.Y.S.2d 642, 653.

We hold, therefore, that the derivative action having been properly instituted, the corporation was before the court for all purposes connected with the suit, and the trial court acquired jurisdiction necessary to order a dissolution of the corporation under factual circumstances justifying that action.

At the conclusion of the trial plaintiffs requested the trial court to make findings on certain controverted fact issues. Among these requests was the issue of whether the directors of the corporation were deadlocked and whether the shareholders were unable to break the deadlock. We find that the trial court failed to make findings on this issue and on the other re-

quest of plaintiffs, but in accordance with the last sentence of Civil Rule 73.01(b) these fact issues are deemed found in accordance with the result reached.

■ As stated in Long v. Norwood Hills Corporation, Mo.App., 380 S.W.2d 451, 470: "It is our duty in this equity case to review the record de novo and give such judgment as the trial court should have given with due deference being accorded the decision of the trial chancellor, who had the advantage of observing and hearing the witnesses as they testified. Handlan v. Handlan, 360 Mo. 1150, 232 S.W.2d 944; Kessler v. United Agencies, supra [Mo.App., 243 S.W.2d 779]."

In spite of disagreement between the testimony of the contending parties, there is remarkably little difference in their respective versions of facts essential to a decision in this case. As we recited earlier, the two families are evenly balanced in stockholdings, in memberships on the four member board of directors, and in the offices held by them.

The business of Missouri Machinery and Engineering Co. consists of the sale and service of pumps, motors, compressors, and supplying accompanying engineering and installation services. Mr. Studley and Mr. Goldstein are both active in the business, Mr. Goldstein being responsible, in general, for "outside" work and Mr. Studley being generally responsible for "inside" work. Mr. Goldstein's duties relate primarily to sales and direct contacts with customers of the company. Mr. Studley's duties relate primarily to operation of the shop and supervision of the shop employees. There was in actual practice a certain amount of overlapping in the performance of the respective duties of the two men and also certain duties for the performance of which the responsibility was not clear. Mr. Goldstein complained that Mr. Studley did not properly supervise the shop employees, did not schedule work properly, and failed to keep adequate time records on jobs. Mr. Studley complained that Mr. Goldstein failed to collect the company's accounts receivable and interfered with and harassed Mr. Studley in his work.

Prior to 1967, Mr. Goldstein had taken the company's inventory and the corporation's tax returns were prepared on the basis of the inventories taken by him. In 1967, Mr. Studley objected to the inventory valuations used by Mr. Goldstein and the latter refused to take an inventory for the end of the year 1967. Mr. Studley took an inventory, but the company's bookkeeper felt the figures were inflated and declined to prepare a 1967 income tax return based on those inventory figures. Mr. Goldstein refused to take an inventory, and neither Mr. Studley nor Mr. Goldstein would sign a tax return based on the inventory figures supplied by Mr. Studley, and at the time of trial, in November 1968, no 1967 income tax return had been filed. In prior years it had been the practice for the company's bookkeeper to prepare monthly financial statements, but he testified he had been unable to do so during 1968 since he had been unable to close the books for 1967 because Mr. Goldstein and Mr. Studley were unable to agree upon the inventory. It is apparent that the inventory made by Mr. Studley was based upon the selling price of the articles comprising the inventory, whereas in prior years the cost price had been used.

The gross amount of the corporation's sales for the years prior to 1964 were not shown, but for the years 1964 through 1966 there was an increase in sales from $119,942.83 to $126,648.59. The sales for 1967 were not shown, but for the first nine months of 1968, sales were only $4,842.69.

Although Mr. Goldstein and Mr. Studley each blame the other for their numerous, and for the most part, petty disagreements, it is apparent that they are unable to cooperate in the management of the corporation's business. They have not even been able to discuss their problems and attempt to resolve them. Whether the failure to prepare an inventory at the end

of 1967 is the fault of Mr. Goldstein for refusing to perform the task he had performed in previous years, or is the fault of Mr. Studley for criticizing the valuation methods used by Mr. Goldstein in the past and then preparing an inventory which even the firm's bookkeeper refused to use in preparing a tax return, is immaterial. The important fact is that as a result of their disagreement, it had not been possible at the time of the trial, in November 1968, to prepare and file the corporation's income tax return which was due months earlier. The same comment is applicable to the inability of the principals to work out a method for keeping records of time spent on performing the company's orders, with resultant loss in billings to the company's customers, and to all of the other wrangles of the principals. It no doubt would have been to the best interests of the parties to come to an agreement, and perhaps individuals acting in a more reasonable manner would have accommodated themselves to each other to their mutual profit. But it is not the province of this court to decide whether parties should work in harmony or whether it would be advantageous for them to do so. The duty of this court is to determine whether, in fact, the directors are deadlocked in the management of the corporate affairs, whether the shareholders are unable to break that deadlock, and whether, as a result, irreparable injury to the corporation is being suffered or is threatened.

We find that the directors are deadlocked and that the shareholders are unable to break the deadlock. The directors are apparently unable to agree upon any action. Since this is a four member board of directors and the shares are evenly divided, there is no possibility of either side electing a majority of the directors even if an election could be conducted. It appears that the shareholders are unable to progress to the point of selecting a chairman for a shareholders' meeting, much less transact any business.

We further find that irreparable damage is threatened the corporation by reason of the deadlock in management. Although Mr. Studley testified that it was his opinion that the company was worth $80,000.00, this testimony must be discounted in view of his preliminary responses that he was afraid to give an opinion and that he did not believe that either he or anyone else could give an opinion of the value of the company. The drastic situation in which the corporation will soon find itself if events continue according to the recent pattern is suggested by the drop in sales during 1968. For the first nine months of that year sales amounted to only $4,842.69, whereas for the last prior year for which figures were shown (1966) sales were $126,648.59. Accounts receivable due the company have accumulated for lack of proper attention to collection. If the corporation is unable to perform essential functions such as filing tax returns and collecting accounts receivable, and if its sales are to continue at a minimal rate, it is apparent that its insolvency is only a matter of time. We believe it necessary for the protection of all who may ultimately be affected by that eventuality that the process be halted at this time.

Accordingly, the judgment of the trial court is reversed and the cause remanded with directions to enter an order dissolving the corporation and appointing a liquidating receiver.

SEILER, P. J., and HOLMAN, J., concur.

STORCKMAN, J., not sitting.