Rockingham,
May 4, 1948. } No. 3730.

Theodore Allen & a.

*v.*

Newmarket Industrial Associates, Inc. & a.

*Walter M. Espovich* (of Massachusetts) and *J. Morton Rosenblum* (*Mr. Espovich* orally), for the plaintiffs.

*Hughes & Burns, Donald R. Bryant* and *Richard E. Shute* (*Mr. Bryant* orally), for the defendant Newmarket Industrial Associates, Inc.

*F. Clyde Keefe* (by brief and orally), for the defendant Sam Smith Shoe Corporation.

JOHNSTON, J. It is not disputed that the power to sell No. 4 mill is in the board of directors under R. L., *c.* 274, *s.* 88, and article II of the by-laws of the associates.

The Court found "that Allen and Bergeron are not the real interested parties to this proceeding but are acting at the instigation of and on behalf and for the benefit of the Rockingham Shoe Company and that the other stockholders who have been made parties plaintiff are in a similar category." It was correctly ruled that this finding did not deprive the plaintiffs of the right to maintain their action. Regardless of the bearing of the finding upon the good faith of the plaintiffs in bringing their suit and its effect upon any exercise of the Court's discretion that might be made, their motive was not a bar to a determination of their rights. "For Rudin's motive, in bringing the suit and asserting his equitable rights, affords no ground for refusing to hear and decide the case." *Johnson* v. *King-Richardson Company,* 36 F. (2d) 675, 677.

No binding agreement for the sale of No. 4 mill has been concluded between the two defendants. April 29, 1946, the directors of the associates voted to sell the property to the Sam Smith Shoe Corporation for the sum of $35,000. If a committee which was appointed could not agree with the buyer on terms, then a deposit of $5,000 was to be refunded. April 30, 1946 a sale memorandum was executed between representatives of the parties which provided that the deed shall be "subject to all restrictions, reservations and easements either of record or as may be agreed upon under the terms of said vote." It was further stipulated that, if it were not possible to complete the transaction, the deposit of $5,000 should be returned to the buyer. The Court ruled that the meeting of April 29 was not legally called and no exception was taken to this ruling.

May 16, 1946, the present bill in equity was filed and a temporary injunction obtained against the proposed conveyance to the Sam Smith Shoe Corporation.

On the following day the directors met to confirm the action taken at the meeting of April 29. The vote provided that the deed should

be subject to such restrictions and reservations and with such privileges as may be determined to be just and proper by the committee previously appointed as enlarged at the May 17 meeting. It was further voted "that the deed and supplementary agreement referred to in the prior motion be referred to the Board of Directors at a duly warned meeting for approval."

It is claimed by the plaintiffs that the action taken at this meeting was invalid because of the participation of two officers of the corporation who were not duly elected directors. The legal effect of the action so taken need not be determined however, since if it were valid, no binding contract has been made pursuant to it. There has never been any meeting of this enlarged committee and accordingly no approval by the board of directors of the deed and the supplementary agreement. No agreement has been completed therefore between the two defendants for the sale of No. 4 mill and the associates is under no legal obligation to sell to the Sam Smith Shoe Corporation. "The law does not make a contract where the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete." 12 Am. Jur. 519. "A contract is made at the time when the last act necessary for its formation is done. . . . " Restatement, Contracts, s. 74.

The plaintiffs are not entitled to the relief asked that there be a public sale. In the case of *Bowditch* v. *Company*, 76 N. H. 351, it was held that majority stockholders owed no duty to the minority when the corporation was being dissolved to hold an auction sale of the assets. "It not infrequently happens that such a sale would be ruinous, when one by private agreement could be negotiated for a fair price and to the advantage of all concerned. Sales at public auction have been ordered because it is thought that in this way a fair sale and the highest price would be assured. This is not because the parties have a vested right to have the value so fixed, but because courts have thought that the business transaction of liquidation (when imposed upon courts) would be better carried out in this way. It was merely a means for giving the parties their rights in the proceeds. It was not a right in and of itself." *Supra*, 362. The manner of sale is in the discretion of the directors.

Nor will equity grant the relief requested of declaring an agreement null and void where it consists only of preliminary negotiations which are incomplete on their face. "If void upon its face, as now contended, the interference of a court of equity would seem to be unnecessary." *Mackall* v. *Casilear*, 137 U. S. 556, 564. See also, *First*

*National Bank* v. *Lindenstruth*, 79 Md. 136, 141; 4 Pomeroy's Equity Jurisprudence (5th *ed.*) 1002; 9 Am. Jur. 360. Accordingly, the plaintiffs fail to make out a case for aid by a court of equity. The bill does not call for the cancellation of any of the corporate records or for the issuance of any permanent injunction. The Court found and ruled that the plaintiffs' allegations of misconduct on the part of the directors, apart from the call of the meeting of April 29, were untrue. "The representatives of the Associates and of Smith acted in good faith and in rightful reliance upon each other in negotiating and executing the agreement of April 30, 1946. That in agreeing to sell No. 4 Mill to the Smith Corporation for $35,000 the officers and directors of the Associates did not act hurriedly, clandestinely, secretly and contrary to and in violation of the best interests of the Associates and its stockholders."

While the directors are obliged to act for the best interests of their company, their actions cannot be controlled in the absence of illegality, irregularity, fraud or gross mismanagement. "The sale being one the majority had power to make, and being free from all taint of fraud or irregularity, a court of equity will not interfere unless there be such inadequacy of price as to amount to proof of gross mismanagement. It is not incumbent on the defendants in such a case to prove a sale for full value, for they are not called upon to justify their action. It is for the plaintiffs to show that the defendants have been guilty of a violation of duty." *Bowditch* v. *Company, supra*, 367. "Within the limits of their authority directors or trustees possess full discretionary power, and in the honest and reasonable exercise of such power they are not subject to control by the stockholders or by the courts at the instance of a stockholder." 19 C. J. S. 83. Until a binding agreement is reached, the directors should give full consideration to all offers for the property. But they are not obliged to sell to the highest bidder if the best interests of the company require otherwise. The associates was incorporated to advance the industrial prosperity of Newmarket. The product, the kind of shop and the business future of the buyer may be considered. Also, by reason of the common use of certain pipes, wires and other facilities it is important that he be friendly and cooperative. Moreover, the directors may give such weight to any moral obligation imposed by negotiations that have taken place with the Sam Smith Shoe Corporation as a reasonable person would under similar circumstances. *Fellows Box Company* v. *Mills*, 86 N. H. 267.

In view of the fact that one or more meetings of the directors will

be held before any transfer of No. 4 mill is completed, some consideration should be given to the manner of holding them. It should be clear that any vote taken is the action of the duly constituted directors. The two officials, Griffin and Berry, who attended the meeting of May 17 and made three of the five motions which were adopted, were not directors *de jure* or *de facto*. In 1946 it was voted to elect nine directors and nine were so chosen. The two officials named were not among them but were treasurer and assistant treasurer. "In short, in order to be a *de facto* officer, there must be color for the claim and a colorable title to the office." 2 Fletcher, Cyclopedia Corporations, 146. While it is proper for company officials other than directors to be present and furnish information and even advice, they should not introduce motions or participate in the voting. They should refrain from dominating the meeting by taking part in the discussion or otherwise. If necessary to get independent action by the directors, the latter may meet in executive session.

The matter of costs is within the jurisdiction of the Superior Court. R. L., *c.* 397, *s.* 3.

*Bill dismissed.*

All concurred.