**VIRGIN ISLANDS TAXI ASSOCIATION, Appellant/Plaintiff**
**v.**
**THE WEST INDIAN COMPANY, LIMITED; BLUE EXECUTIVE**
**SERVICES AND TRANSPORTATION, LLC D/B/A BEST TAXI; KERRY**
**HARRIGAN; AND TERRI GRIFFITHS, Appellees/Defendants**

S. Ct. Civil No. 2016-0062

Supreme Court of the Virgin Islands

March 22, 2017

475

LEE J. ROHN, ESQ., RHEA LAWRENCE, ESQ. (Argued), Lee J. Rohn and Associates, LLC, St. Croix, USVI, *Attorneys for Appellant.*

ADRIANE DUDLEY, ESQ., CAROL ANN RICH, ESQ. (Argued), Dudley Rich Davis, LLP, St. Thomas, USVI, *Attorneys for Appellee The West Indian Company, Ltd.*

ARTHUR POMERANTZ, ESQ., Law Offices of Arthur Pomerantz, St. Thomas, USVI, *Attorney for Appellee Blue Executive Services and Transportation, LLC d/b/a Best Taxi.*

TERRI GRIFFITHS, ESQ., St. Thomas, USVI, *Attorney for Appellees Kerry Harrigan and Terri Griffiths.*

CABRET, *Associate Justice*, MOLLOY, *Designated Justice*,[1] and BRADY, *Designated Justice*.[2]

## OPINION OF THE COURT

### (March 22, 2017)

CABRET, *Associate Justice*. The Virgin Islands Taxi Association ("VITA") appeals the Superior Court's denial of its motion for a preliminary injunction seeking to prohibit the West Indian Company, Ltd. ("WICO") from entering into a concession agreement with Blue Executive Services and Transportation, LLC ("BEST"). Although we conclude that WICO's decision to award the concession agreement to BEST is subject to judicial review — and that VITA's challenge to that decision has not been mooted by the execution of the concession agreement — we nevertheless affirm the Superior Court's decision.

## I. BACKGROUND

In 1993, the Legislature enacted Act No. 5826 (V.I. Reg. Sess. 1993). *See* 1993 V.I. Sess. Laws 10 (Act 5826). Act 5826 approved a stock purchase agreement between Selendia Finance and Investment, B.V. and the Government of the Virgin Islands, under which the Government agreed to buy all of WICO's issued and outstanding stock from Selendia. Act 5826, § 2(b), 1993 V.I. Sess. Laws 10, 12. Following this acquisition,

---

[1] Chief Justice Rhys S. Hodge is recused from this appeal. The Honorable Robert A. Molloy, a Judge of the Superior Court of the Virgin Islands, sits in his place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] Associate Justice Ive Arlington Swan is recused from this appeal. The Honorable Douglas A. Brady, a Judge of the Superior Court of the Virgin Islands, sits in his place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

the Government of the Virgin Islands transferred 100% of WICO's shares to the Virgin Islands Public Finance Authority ("PFA"), a public corporation and governmental instrumentality created by the Government of the Virgin Islands. Act 5826, § 2(c), 1993 V.I. Sess. Laws 10, 12; *see also Sprauve v. West Indian Co.*, 799 F.3d 226, 227, 63 V.I. 1032 (3d Cir. 2015). "The PFA is run by a board of directors appointed by the Governor of the Virgin Islands, with the advice and consent of the Virgin Islands Legislature . . . [and] WICO is run by its own board of directors, appointed by the PFA." *Id.* Under section 3 of Act 5826, the Government funded WICO's acquisition by issuing revenue bonds. 1993 V.I. Sess. Laws 10, 12.

The introductory clauses of Act 5826 recite that the Virgin Islands acquired WICO to resolve outstanding litigation, and to "transfer to public ownership and control" certain real estate "that may be suitable for development for public use," among other things. *Id.* at 10-11. Section 4 of Act 5826 provides that WICO "shall be empowered to undertake any lawful act or activity permitted under [its] [c]ompany [c]harter and permissible for a general business corporation under the general corporation laws of the Virgin Islands." *Id.* at 12. Act 5826 also authorizes WICO "to enter into contracts with any person, firm, or corporation for the operation and maintenance of [its f]acilities or for consulting or advisory services in connection with the operation or maintenance of [its f]acilities." Act 5826, § 5, 1993 V.I. Sess. Laws 10, 12-13. Yet despite this discretion, section 8 of Act 5826 explains that WICO "is . . . granted the status and authority of a public corporation and governmental instrumentality of the Government of the Virgin Islands of the United States and shall be deemed to be a public entity operating on behalf of the Government, rather than a private corporation[.]" 1993 V.I. Sess. Laws 10, 13. Act 5826 further provides that, if its provisions conflict with "any other [a]ct of the Legislature of the Virgin Islands," the provisions of Act 5826 control. Act 5826, § 10, 1993 V.I. Sess. Laws 10, 13.

On June 1, 2016, WICO issued a request for qualifications ("RFQ"), seeking a statement of qualifications from companies interested in providing taxi services to cruise ship passengers at the WICO dock on St. Thomas.[3] The RFQ indicated that the successful applicant "will be selected based on its ability to make available not less than 300 licensed vehicles and

---

[3] RFQs represent one tool used by companies to select service providers, and work in tandem with requests for proposals ("RFP"s). In general, companies issue RFQs to identify vendors

479

to submit evidence meeting the criteria set forth [in the RFQ] to operate under a [c]oncession [a]greement with WICO." Under the section captioned "Anticipated Scope of Services," the RFQ detailed several criteria with which the selected provider was expected to comply, and under the section entitled "Proposal Format," the RFQ detailed how candidates should submit their responses to the RFQ. The RFQ indicated that WICO would appoint a committee to review and rank responses to the RFQ, and that WICO reserved "the right to reject any and all submissions to [the] RFQ," and to "waive informalities/technicalities, if deemed to be in WICO's best interests."

WICO received three submissions by the RFQ's deadline, and WICO's board convened a three-person committee to review the submissions. The committee reviewed each of the three submissions in accordance with the criteria set forth in the RFQ, and ranked each applicant using a numerical point system. Based on the response to the RFQ alone, VITA received the highest score from two of the three members, and those same members ranked BEST second highest. The third member rated VITA and BEST equally.

Because VITA and BEST "were deemed most responsive" to the RFQ, the committee invited them for follow up interviews to discuss their responses to the RFQ. During these follow up interviews, the committee questioned VITA representatives about "tax issues and complaints that WICO has been receiving" concerning its operation. The committee also expressed concern "about taxi soliciting . . . , blatant disregard [of] the rule[s] and regulations . . . , and corrective actions being planned by [VITA's] leadership." The committee questioned BEST about maintaining healthy relationships between drivers and management, and "whether the company would be able to provide the adequate amount of

---

interested in providing services. Companies review the responses to RFQs to identify qualified vendors, and then issue RFPs to those vendors. RFPs detail the nature of the project that the selected vendor will be expected to complete, and assist a company in awarding a contract by, among other things, helping a company rank qualified vendors based on a proposed contract price. *See, e.g., United States v. Joint Meeting of Essex & Union Counties*, 997 F. Supp. 593, 596 (D.N.J. 1998) (explaining the use of RFQs and RFPs under New Jersey's government contracting laws); *Elec. Contractors, Inc. v. Dep't of Educ.*, 303 Conn. 402, 35 A.3d 188, 225 n.45 (Conn. 2012) (same, under Connecticut law). Here, although WICO relied upon an RFQ to narrow the field of potential service providers to VITA and BEST, WICO did not issue an RFP to either vendor.

cars to seamlessly provide [service to] all passengers needing taxi services." BEST "assured [the committee] that based on the amount in their fleet coupled with the communications that they have gotten from the many disgruntled V.I. Taxi members, they will have more than enough drivers to fulfill the agreement." The committee concluded its evaluations of the responses to the RFQ on August 19, 2016.

The committee invited VITA and BEST to present proposals to WICO's full board during a meeting on September 8, 2016. After the parties concluded their presentations, WICO's board deliberated, and voted four-to-one to award the concession agreement to BEST. The Board notified VITA of its decision on September 12, 2016.

VITA filed suit against WICO, BEST, and others, on September 21, 2016, seeking an injunction prohibiting WICO from awarding the concession agreement to BEST and a declaration that WICO must award the concession agreement to VITA, among other relief. Two days later, on September 23, 2016, VITA moved for a temporary restraining order and a preliminary injunction, requesting that the Superior Court enjoin WICO from entering into a three-year concession agreement with BEST. The Superior Court granted the request for temporary restraining order in a September 28, 2016 memorandum opinion and order, and scheduled a preliminary injunction hearing for October 4, 2016.

The Superior Court heard testimony on October 4, 2016, October 11, 2016, and October 19, 2016. Because the preliminary injunction hearing took longer than anticipated, the Superior Court extended the temporary restraining order until October 26, 2016. On October 26, 2016, the Superior Court declined to extend the order further, denied VITA's motion for preliminary injunction, and advised that an opinion explaining the reasons for the decision would follow. VITA filed its notice of appeal with this Court on October 27, 2016, and the Superior Court entered a memorandum opinion explaining its denial of VITA's motion on October 31, 2016.

## II. JURISDICTION

This Court has jurisdiction over "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing, or dissolving injunctions." V.I. CODE ANN. tit. 4, § 33(b)(1). Such orders

must be appealed "within thirty days after the . . . order has been rendered." *Id.* § 33(d)(5); *see also First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 600-01 (V.I. 2011) (holding that the jurisdictional 30-day filing deadline in section 33(d)(5) applies to appeals under section 33(b), generally). VITA appealed the Superior Court's October 26, 2016 order denying its motion for a preliminary injunction within 30 days of its entry. We therefore have jurisdiction over this appeal.

## III. DISCUSSION

VITA challenges WICO's decision to award the concession agreement to BEST. This challenge assumes that VITA has standing to challenge WICO's decision, and that WICO's execution of the concession agreement with BEST has not mooted WICO's claim. We address each assumption before turning to the merits of the Superior Court's ruling.

### A. Standing

█ In the Virgin Islands, standing, like the other doctrines stemming from the case-and-controversy requirements of Article III of the United States Constitution, functions as a claims-processing rule rather than a jurisdictional limitation on Virgin Islands courts. *See Tip Top Constr. Corp. v. Gov't of the V.I.*, 60 V.I. 724, 730 n.2 (V.I. 2014). Given WICO's unique status as a public corporation that enjoys statutory authority to operate as a private entity, *see* 1993 V.I. Sess. Laws 10, 12-13, we requested that the parties brief the question of whether VITA has standing to challenge WICO's decision to award the concession to BEST. *See V.I. Taxi Ass'n v. West Indian Co.*, S. Ct. Civ. No. 2016-0062, slip op. at 2-3 (V.I. Nov. 15, 2016). In response to our briefing order, VITA maintains that WICO's decision falls within the general procurement framework codified in chapter 23 of title 31 of the Virgin Islands Code, 31 V.I.C. §§ 231-251. It further contends that WICO's decisions are reviewable under the taxpayer suit statute,[4] and the general writ of review statutes.[5] We address each statutory theory in turn.

█ The Virgin Islands' procurement statutes are codified under chapter 23 of title 31, and vest authority in the Director of Property and Procure-

---

[4] 5 V.I.C. § 80.
[5] 5 V.I.C. §§ 1421-1423.

ment to "purchase and contract for all supplies, material, equipment and contractual services . . . required by any and all departments, officers, boards, institutions, and other agencies of the Government of the Virgin Islands, except the Legislature and the Superior Court." 31 V.I.C. § 232(1). Such decisions are subject to judicial review. *See, e.g., Tip Top Constr. Corp.*, 60 V.I. at 732.

■ VITA maintains that WICO is subject to the procurement statutes because those statutes exempt only the Legislature and the Superior Court from their reach, and because Act 5826 does not establish WICO as an "autonomous" instrumentality of the Virgin Islands government. But WICO does not operate under the procurement framework established by chapter 23 of title 31. Instead, as authorized under section 5 of Act 5826, WICO may "enter into contracts with any person, firm or corporation for the operation and maintenance of the Facilities or for consulting or advisory services in connection with the operation or maintenance of the Facilities." 1993 V.I. Sess. Laws 10, 12-13. The authority conferred by this Act operates to the exclusion of the Virgin Islands procurement statutes. *See* Act 5826, § 10, 1993 V.I. Sess. Laws 10, 13 ("If any of the provisions of this Act are inconsistent with the provisions of any other Act of the Legislature of the Virgin Islands, the provisions of this Act shall be controlling."); *see also Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S. Ct. 1989, 48 L. Ed. 2d 540 (1976) (observing that " 'a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment' " (quoting *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974))). Consequently, it is improper to categorize WICO's award of the taxi concession agreement to BEST as a procurement decision under chapter 23 of title 31, subject to the standards of judicial review that apply to such decisions. *See, e.g., Tip Top Constr. Corp.*, 60 V.I. at 732 (emphasizing that judicial review of procurement decisions under chapter 23 of title 31 is extremely limited in scope, and that such decisions should not be set aside unless they are arbitrary or irrational). Therefore, to the extent that VITA has standing to challenge WICO's decision to award the concession agreement to BEST, it must arise by operation of other statutory provisions.

The statutory predicate for this review is found under the taxpayer suit statute, codified in section 80 of title 5 of the Virgin Islands Code. Under section 80, a taxpayer may "maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful

disbursement of territorial funds." 5 V.I.C. § 80. VITA argues that WICO is subject to suit under section 80 because its "Board is comprised of territorial officers and its CEO Joseph Boschulte is also a territorial officer [and because] [t]he Board and Boschulte[ ] were acting on behalf of WICO to award BEST" the taxi concession. In contrast, WICO maintains that standing under section 80 is inappropriate because "[n]o taxpayer dollars are involved" in WICO's operations and because WICO "is a private corporation" that is not comprised of territorial officers and employees.

■ But section 80 "does not require that the alleged illegal [or unauthorized] act which is sought to be restrained involves public funds or property to which the plaintiffs' tax payments have contributed, or even that the alleged illegal act involves the public funds or property at all." *Smith v. Gov't of the V.I.*, 329 F.2d 131, 134 (3d Cir. 1964). Rather, "section 80 mean[s] what it says, that any taxpayer may sue the Government or one of its officers or employees to prevent a violation of the law." *Haynes v. Ottley*, 61 V.I. 547, 567 (V.I. 2014) (citing *Donastorg v. Gov't of the V.I.*, 45 V.I. 259, 270 (V.I. Super. Ct. 2003)). Standing under section 80 is therefore premised on two elements: an act by "a territorial officer or employee," and the allegation that such an act was either "illegal" or "unauthorized," or that it constituted a wrongful disbursement of territorial funds. *See* 5 V.I.C. § 80.

■ And both of these elements are present in this case. Although section 80 does not define the phrase "territorial officer or employee," the conflict-of-interest statutes that apply generally to the executive branch define that term to include officers and employees of public agencies. 3 V.I.C. § 1101. Those same statutes define the term "public agency" to include "any department, board, commission, body or agency of the [Government of the United States Virgin Islands,] including any public corporation." *Id.* It is well established that we should, "if possible, construe statutes harmoniously." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1143 (4th Cir. 1990) (citation omitted); *accord Fish v. Kobach*, 840 F.3d 710, 736 (10th Cir. 2016) (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000)); *United States v. Marshall*, 798 F.3d 296, 309 (5th Cir. 2015); *Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 670 (7th Cir. 2014) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738-39, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (Scalia, J., concurring

in part and concurring in the judgment)), *cert. denied*, 135 S. Ct. 947 (2015); *Pac. Mut. Life Ins. Co. v. Am. Guar. Life Ins. Co.*, 722 F.2d 1498, 1500 (9th Cir. 1984) (citing *Pac. Legal Found. v. Cal. Unemployment Ins. Appeals Bd.*, 29 Cal. 3d 101, 172 Cal. Rptr. 194, 624 P.2d 244, 250 (Cal. 1981)), *overruled on other grounds by United States v. Keene*, 933 F.2d 711 (9th Cir. 1991); *In re Cent. States Freight Corp.*, 45 F.2d 73, 75 (6th Cir. 1930); *see also ClearCorrect Operating, LLC v. Int'l Trade Comm'n*, 810 F.3d 1283, 1296 (Fed. Cir. 2015) ("As when defining words in a statute, their ultimate meaning should remain consistent with the remainder of the statute as a term's meaning must be 'compatible with the rest of the law.' " (quoting *Util. Air Regulatory Grp. v. EPA*, 573 U.S. ___, ___, 134 S. Ct. 2427, 2442 (2014))); *see generally* 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 53:01, 323 (6th ed. 2000) ("Harmony and consistency are positive values in a legal system because they serve the interests of impartiality and minimize arbitrariness. Construing statutes by reference to others advances those values."). Accordingly, we interpret the "territorial officer or employee" requirement imposed by section 80 in harmony with the definition provided by the conflict-of-interest statutes codified elsewhere in the Virgin Islands Code.[6]

██ ██ Under this definition, WICO's award of the concession agreement to BEST constitutes an act of a territorial officer or employee. Act 5826 establishes that WICO is "a public entity operating on behalf of the Government, rather than a private corporation," and Joseph Boschulte executed the concession agreement on behalf of WICO in his capacity as "President and CEO" of that public entity. Since the Virgin Islands Code treats public corporations as public agencies, Boschulte is an officer of a public agency, and taxpayers may sue under section 80 to prevent him from engaging in illegal or unauthorized acts. *See* 5 V.I.C. § 80. And, since VITA maintains that WICO was unauthorized to award the concession to BEST under the terms of the RFQ, VITA has standing to challenge WICO's decision under section 80 of title 5. *See Moorhead v. Mapp*, 62 V.I. 595, 602 (V.I. 2015) ("Section 80, however, does not mandate that the Government's violation be clear, but only that its action

---

[6] We note that, to the extent that WICO's board members act as officers and receive compensation for such duties, WICO's bylaws subject those members to the conflict-of-interest statutes codified in title 3 of the Virgin Islands Code.

be 'illegal' or 'unauthorized.' " (citing 5 V.I.C. § 80)); *cf. State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 92 A.3d 400, 453-54 (Md. 2014) (analogizing a citizen who proceeds against a public agency under taxpayer standing to a shareholder who prosecutes a derivative action to prevent illegal or unauthorized action by a corporation).

In reaching this conclusion, we reject WICO's contention that, when read as a whole, Act 5826 establishes WICO as a public entity for purposes of taxation only. WICO argues that the provision of section 8(b) of Act 5826 that identifies WICO as "a public entity operating on behalf of the Government of the Virgin Islands, rather than a private corporation," must be read in the context of section 8 as a whole, which, according to WICO, only addresses WICO's post-acquisition tax obligations. This argument ignores the structure of section 8(b) and the remaining language of Act 5826.

 When we interpret legislative acts, we construe words and phrases in their context and according to the common and approved usage of the English language. 1 V.I.C. § 42. Section 8(b) of Act 5826 provides that,

> [u]pon acquisition of the Facilities and all of the issued and outstanding shares of common stock of [WICO] by the Government, [WICO] is hereby granted the status and authority of a public corporation and governmental instrumentality of the Government of the Virgin Islands of the United States and shall be deemed to be a public entity operating on behalf of the Government, rather than a private corporation; and that as such, [WICO] shall not be required to pay any taxes or assessments on any of the property acquired or to be acquired by it, or on its operations or activities, or on the income derived from any of its operations or activities.

1993 V.I. Sess. Laws 10, 13. This text contains two discrete propositions, each separated by a semicolon. "A semicolon is used to show that what follows is grammatically independent, though closely related in thought" to the material that precedes the semicolon. *McLeod v. Nagle*, 48 F.2d 189, 191 (9th Cir. 1931) (citation omitted); *accord Elgin Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 718 F.3d 488, 494 (5th Cir. 2013) ("[A] semicolon . . . tends to suggest related but separate ideas[.]" (citations omitted)). The first proposition in section 8(b) of Act 5826 establishes WICO as a public entity, and while the second proposition clarifies that

WICO shall not be required to pay certain taxes because of the first proposition, the second proposition does not modify the first. *See Mills v. State Bd. of Equalization*, 97 Mont. 13, 33 P.2d 563, 569-70 (Mont. 1934) (rejecting the argument that a statute containing phrases divided by semicolons constituted a single sentence, such that the language of each phrase modified the others); *see also City of Elizabeth v. 264 First Street, LLC*, 28 N.J. Tax 408, 427 (N.J. Tax. Ct. 2015) ("[A] semicolon in an antecedent phrase is commonly interpreted to separate that phrase from a subsequent modifying phrase."). Further, WICO's argument that it is a public corporation solely for purposes of taxation ignores the whereas clauses of Act 5826, which recite that the Government acquired WICO to "transfer to public ownership and control" WICO's facilities. 1993 V.I. Sess. Laws 10, 10. Treating WICO as a public corporation for purposes of taxation only contradicts this language. *See Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012) (rejecting a proposed interpretation of a statute that would render a portion of the statute "wholly superfluous and without an independent meaning or function of its own"), *aff'd*, 702 F.3d 735 (3d Cir. 2012). Accordingly, WICO's argument does not persuade us to overlook the plain text of Act 5826, which classifies WICO as a public corporation and exposes it to suit under section 80 of title 5.

In addition to standing under section 80, VITA also contends that it can challenge WICO's decision under the general writ of review statutes, codified in sections 1421-1423 of title 5 of the Virgin Islands Code, because WICO is an administrative agency. VITA is mistaken.

Under these statutes, "[a]ny party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein." 5 V.I.C. § 1421. But in order to obtain such review, there must be "no appeal or other plain, speedy, and adequate remedy" available to the petitioner. 5 V.I.C. § 1422. Here, VITA had access to other plain, speedy, and adequate remedies: VITA sought and received a temporary restraining order, had the opportunity to substantiate its entitlement to injunctive relief, to pursue a declaratory judgment under the Virgin Islands Declaratory Judgment Act, 5 V.I.C. §§ 1261-1272, and, as discussed above, to pursue relief under the taxpayer suit statute, 5 V.I.C. § 80. *See* 5 V.I.C. § 1262 ("Any person . . . whose rights, status or other legal relations are affected by a . . . contract or franchise" to "have determined any question of construction or validity arising under the . . . contract[ ] or franchise and obtain a declaration of rights, status or other legal relations thereunder."); *Tip Top Constr., Inc. v.*

*Gov't of the V.I. Dept. of Prop. & Procurement*, 41 V.I. 72, 79 (V.I. Super. Ct. 1999) (concluding that access to declaratory and injunctive relief represented "another plain, speedy, and adequate remedy" under chapter 97 of title 5); *see also Gov't of the V.I. v. V.I. Bd. of Elections*, Case No. ST-14-CV-133, 2014 V.I. LEXIS 34, at *4 (V.I. Super. Ct. June 23, 2014) (concluding that access to declaratory relief precluded a plaintiff from seeking a writ of review under chapter 97 of title 5). Accordingly, standing under the general writ of review statutes is not available to VITA here.

## B. Mootness

We next consider whether this appeal has become moot because WICO and BEST executed the concession agreement on October 27, 2016, after the temporary restraining order expired and the Superior Court denied VITA's motion for a preliminary injunction. *See Mapp v. Fawkes*, 61 V.I. 521, 529-30 (V.I. 2014) (considering whether the occurrence of a general election mooted a challenge to the use of certain electronic voting machines). VITA claims that this appeal is not moot because the taxi concession agreement "is voidable by the Court and may be set aside if [WICO's] decision in awarding the Concession Agreement is reversed." VITA further argues that, if the Court finds this matter to be moot, it "would render [itself] incapable of ever reviewing an agency's procurement decision, as the agency need only sign a contract in order to escape review." WICO, on the other hand, claims that this matter is moot because the central premise of VITA's claim — that it is the only entity qualified to operate taxi concessions at the WICO dock — no longer exists since BEST has been providing taxi services for WICO following the injunction's dissolution.

██ "[T]his Court's general practice of not considering a moot appeal on the merits is not jurisdictional, but an exercise of judicial restraint that, as well as other judicially-created doctrines, is subject to waiver." *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 564 (V.I. 2012); *see also Haynes v. Ottley*, 61 V.I. 547, 558 (V.I. 2014) ("[T]he mootness doctrine in the Virgin Islands is a non-jurisdictional claims-processing rule that has been incorporated into Virgin Islands law only as a matter of judicial policy." (quoting *Mapp*, 61 V.I. at 530)); *accord Francis v. Recycling Solutions, Inc.*, 695 A.2d 63, 68 (D.C. 1997) (same, with respect to the District of Columbia). However, a case is not moot if the

underlying legal issue "is capable of repetition yet evading review." *See Haynes*, 61 V.I. at 559; *cf. Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 881 (3d Cir. 1986) (applying this exception to the mootness doctrine despite the fact that the underlying bid protest had been resolved because the plaintiff would likely face a similar issue again); *Valley Constr. Co. v. Marsh*, 714 F.2d 26, 28 (5th Cir. 1983) (same). The execution of a contract does not moot a challenge to the procedures used to secure that contract where it is possible that dissatisfied bidders will be subject to those same procedures again. *See, e.g., Kingdomware Techs., Inc. v. United States*, 579 U.S. __, 136 S. Ct. 1969, 1976, 195 L. Ed. 2d 334 (2016) (concluding that a challenge to the Department of Veterans Affairs' refusal to apply the statutory "Rule of Two" under 38 U.S.C. § 8127 was not moot); *Sloan v. Dep't of Transp.*, 618 S.E.2d 876, 878 (S.C. 2005) (concluding that a challenge to a state transportation department's procurement of construction projects with 'requests for proposals' instead of through competitive sealed bids was not moot); *accord Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982) ("[I]n the absence of a class action, the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combined: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975) (internal quotation marks omitted))).

 Here, although WICO and BEST have executed the concession agreement, that agreement is scheduled to expire on October 26, 2019. Further, the agreement is subject to a one-year probationary term, during which WICO may terminate the agreement if BEST fails to comply with WICO's rules and regulations. Whether WICO terminates BEST's concession within the one-year probationary period, or the agreement expires according to its terms in three years, there is a reasonable expectation that VITA may again seek to be selected as WICO's taxi provider, and be subject to WICO's employment of the same procedures to which VITA objects. Consequently, even though BEST is currently servicing the WICO dock under the concession agreement, VITA's challenge to WICO's decision to award the concession agreement to BEST is not moot.

## C. Merits

■ We now turn to the merits of the Superior Court's decision to deny VITA's motion for a preliminary injunction. In deciding whether to grant a preliminary injunction, the Superior Court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Marco St. Croix, Inc. v. V.I. Hous. Auth.*, 62 V.I. 586, 590 (V.I. 2015) (quoting *Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013)). The movant bears the burden of "making some showing on all four injunction factors," and the Superior Court "must evaluate the moving party's showing on all four factors under a sliding scale standard" by making findings on each of the four factors and determining "whether — when the factors are considered together and weighed against one another — the moving party has made 'a clear showing that [it] is entitled to injunctive relief.' " *3RC & Co., Inc. v. Boynes Trucking Sys.*, 63 V.I. 544, 557 (V.I. 2015) (quoting *Yusuf*, 59 V.I. at 847). The Superior Court concluded that VITA did not make this showing.

While we review the Superior Court's overall decision to grant an injunction for abuse of discretion, we review the Superior Court's factual findings on each of the factors for clear error, and exercise plenary review of its conclusions of law. *Tip Top Constr. Corp.*, 60 V.I. at 730 (citing *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012)); *accord Marco St. Croix*, 62 V.I. at 589-90 (citations omitted). Since VITA does not challenge the Superior Court's conclusion that the third factor weighed slightly in favor of granting an injunction, we examine only the Superior Court's decisions concerning the likelihood of success on the merits, the likelihood of irreparable injury, and the public interest.

### 1. Likelihood of success on the merits

The Superior Court concluded that VITA failed to demonstrate a likelihood of success on the merits because it failed to establish that WICO's award of the concession agreement to BEST was arbitrary or irrational. This conclusion assumes that WICO's decision is entitled to some degree of judicial deference.

490

On appeal, VITA contends that this Court should reject the use of the "arbitrary and irrational" standard, and, citing our opinion in *Bryan v. Fawkes*, 61 V.I. 201 (V.I. 2014) for support, argues that WICO should be afforded no deference with regard to the factual basis for awarding BEST the concession agreement. But VITA misreads *Bryan*. In *Bryan*, this Court rejected the proposition that the deference given to federal agencies' interpretations of ambiguous statutes applies to territorial agencies, and instead concluded that — in the absence of express statutory language to the contrary — the legal conclusions of a territorial agency are subject to plenary review. 61 V.I. at 226-28. Since this case concerns the factual underpinnings of WICO's decision, not interpretations of the law, *Bryan* simply does not speak to the issues before the Court.

However, an argument could be made that, under the case of *Marco St. Croix, Inc. v. V.I. Housing Auth.*, 62 V.I. 586 (V.I. 2015), WICO is at least entitled to the deference accorded by the "arbitrary and irrational" framework. *Marco* concerned the treatment of bids solicited by the Virgin Islands Housing Authority. Like WICO, the Housing Authority is "a public body corporate," and enjoys the power to "enter into and execute contracts and instruments of every kind and nature, necessary and convenient" to the performance of its statutory duties. 29 V.I.C. §§ 31, 35. Because of this power, the Housing Authority, like WICO, relies on its own internal procedures for dealing with bids and protests, rather than the general procurement framework provided by chapter 23 of title 31. *See Marco St. Croix, Inc.*, 62 V.I. 591 n.3. In *Marco*, we emphasized that judicial review of the Housing Authority's procurement decisions "is extremely limited in scope," and that a reviewing court should not disturb the factual bases of the Housing Authority's decision "unless they are arbitrary or irrational." *Id.* at 591. Given that WICO is also a public corporation with the ability to enter into its own contracts for the operation of its business, *Marco* illustrates that WICO's decisions are entitled to some deference from the courts.

██ ██ But the analogy between the Housing Authority and WICO breaks down when one examines the range of discretion enjoyed by each entity. The Housing Authority has "the powers, rights, duties, privileges, functions, obligations, and status as a public body corporate and politic, prescribed or provided by [chapter 1 of title 29]." 29 V.I.C. § 31. And while these powers are broad, *see* 29 V.I.C. § 35, the Housing Authority may only exercise its powers to the extent necessary to fulfill its statutory

purpose — providing decent and affordable housing for residents of the U.S. Virgin Islands. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) ("Regardless of how serious the problem an administrative agency seeks to address, . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.' " (quoting *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 517, 108 S. Ct. 805, 98 L. Ed. 2d 898 (1988))); *see also* 29 V.I.C. § 35 ("The [Housing] Authority shall have all the powers necessary and convenient to carry out and perform the purposes and provisions of this chapter[.]"); *Rosa v. V.I. Hous. Auth.*, 43 V.I. 131, 135 (V.I. Super. Ct. 2001) (explaining that the Virgin Islands Housing and Urban Renewal Authority — later renamed the Virgin Islands Housing Authority — was created "to carry out the goals as set forth initially in the [Slum Clearance and] Housing [Development] Act [of 1949, Pub. L. No. 81-171, 63 Stat. 413 (1949).]"); *V.I. Urban Renewal Bd. v. George*, 13 V.I. 473, 475 (V.I. Super. Ct. 1977) ("[T]he Legislature created the Virgin Islands Housing Authority . . . for the express purposes of participating in federal housing programs authorized under the provisions of the National Housing Act of 1949[.]"). But WICO is not so limited. In promulgating Act 5826, the Legislature vested WICO with discretion to undertake "any lawful act or activity permitted under [WICO's company charter] and permissible for a general business corporation under the general corporation laws of the Virgin Islands." Act 5826, § 4, 1993 V.I. Sess. Laws 10, 12. And while that authority is defined in part by statute, *see* 13 V.I.C. §§ 31, 32 (enumerating the general and specific powers conferred to corporations), the "general corporation laws of the Virgin Islands" also include all rights and powers conferred on a corporate entity by operation of common law. *See Haynes*, 61 V.I. at 566-67 ("[T]he Virgin Islands Legislature, when enacting a new law, is deemed to have knowledge of existing law . . . [and] is presumed to intend for the new law to operate in harmony with existing statutes and common law." (citations omitted)); *see also Cascen v. People*, 60 V.I. 392, 404-05 (V.I. 2014) (collecting cases). Since WICO enjoys a greater range of operational discretion than the Housing Authority, it is not clear that the two entities should receive similar deference from the courts.

Moreover, we derived the "arbitrary and irrational" framework from federal case law, *see Tip Top Constr. Corp.*, 60 V.I. at 732 (citing

*Princeton Combustion Research Labs, Inc. v. McCarthy*, 674 F.2d 1016, 1021 (3d Cir. 1982)), and have only applied it to cases implicating the use of federal funds. *See Marco St. Croix*, 62 V.I. at 587; *Tip Top Constr. Co.*, 60 V.I. at 727. Unlike in *Marco* and *Tip Top Construction*, WICO's decision to award the concession contract to BEST does not involve the disbursement of federal funds. Further, federal procurement decisions are generally reviewable under the framework provided by the Administrative Procedure Act, *see, e.g.*, *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 865, 137 U.S. App. D.C. 371 (D.C. Cir. 1970), and the Virgin Islands has no analogue to that statute. Accordingly, we decline to apply the "arbitrary and irrational" framework articulated in *Tip Top Construction* and *Marco* to review WICO's decision to award the concession agreement to BEST. However, this does not mean that WICO's decision is immune from judicial review.

 In enacting Act 5826, the Legislature determined that WICO should operate as a private corporation. *See* 1993 V.I. Sess. Laws 10, 12-13. We presume that the Legislature intends for its acts to operate harmoniously with the common law, unless a contrary indication appears in the text of an act. *See Haynes*, 61 V.I. at 566-67; *Cascen* 60 V.I. at 404-05. Since Act 5826 does not purport to modify the common law, we conclude that the Legislature intended for WICO to exercise the decisionmaking authority that a private corporation would enjoy at common law, and consequently, to be subject to the same level of judicial scrutiny.

 Because this Court has never opined on the nature of such scrutiny, our decision in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011) obligates us to pause our review of the Superior Court's decision in order to consider three factors to determine the extent to which the common law permits courts to review corporate decisionmaking. *See Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014) ("[W]hen confronted with an issue of Virgin Islands common law that this Court has not resolved . . . courts must 'engage in a three-factor analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands.' " (quoting *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014))). Although a few opinions from the District Court of the Virgin

Islands have alluded to the broad discretion enjoyed by private corporations, *see*, *e.g.*, *Prentice v. OfficeMax North Am.*, No. 9-5, 2012 U.S. Dist. LEXIS 35090, at *36 (D.V.I. Mar. 15, 2012) ("Indeed, a district court may not second-guess the [corporation's] business judgment." (citing *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995))), no court in this jurisdiction has examined the issue in detail. A clear majority of jurisdictions permit private corporations to exercise their best business judgment and will not second-guess decisions made in good faith, *see generally Mueller v. Zimmer*, 2005 WY 156, 124 P.3d 340, 351-52 (Wyo. 2005) (discussing the common law business judgment rule and collecting cases), and courts will only review the exercise of such discretion in cases of bad faith, fraud, illegality, or cases concerning acts that exceed the decisionmaker's authority, as set forth in the corporation's governing documents or any applicable statutes or regulations.[7] As in other jurisdictions, this approach represents the

---

[7] *See, e.g.*, *Barnes v. State Farm Mut. Auto. Ins. Co.*, 16 Cal. App. 4th 365, 20 Cal. Rptr. 2d 87, 95-96 (Cal. Ct. App. 1993) (plaintiff's failure to demonstrate "fraud, oppression, corruption or conflict of interest by the directors" precluded him from challenging corporation's decision to withhold dividend payments); *Mercantile Trading Co. v Rosenbaum Grain Corp.*, 17 Del. Ch. 325, 154 A. 457, 461 (Del. Ch. 1931) ("Fraud, actual or presumed, or illegal or ultra vires misconduct must be shown to justify an interference by the courts with [corporate] decisions."); *Levant v. Whitley*, 755 A.2d 1036, 1043 n.11 (D.C. 2000) ("[I]n the absence of: fraud or bad faith or want of fairness on the part of the board of governors . . . the courts will not interfere in the affairs of a social club or corporate entity." (citation omitted)); *West Coast Hosp. Ass'n v. Hoare*, 64 So.2d 293, 299 (Fla. 1953) ("It is a general rule that a court of equity will not interfere with the internal management of a corporation, unless the act complained of is fraudulent, illegal, or ultra vires."); *Regenstein v. J. Regenstein Co.*, 213 Ga. 157, 97 S.E.2d 693, 696 (Ga. 1957) ("[U]nless sufficient facts are alleged which show that such a course is pursued for reasons which are fraudulent, ultra vires, or illegal, a court of equity will not interfere to control the management of a corporation."); *Yap v. Wah Yen Ki Tuk Tsen Nin Hue*, 43 Haw. 37, 40 (Haw. 1958) ("Courts will not interfere with an action of a majority of the members which has not been done in the interest of the majority to the detriment of minority members and which is not fraudulent, illegal, or ultra vires." (citations omitted)); *Fields v. Sax*, 123 Ill. App. 3d 460, 462 N.E.2d 983, 989, 78 Ill. Dec. 864 (Ill. Ct. App. 1984) ("Absent evidence of bad faith, fraud, illegality, or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors."); *TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985, 991 (Ind. 2014) ("[A]bsent evidence of bad faith or fraud . . . the courts must and properly should respect corporate directors' determinations, however ultimately unwise or inexpedient the decision or result is viewed in hindsight." (citation and internal quotation marks omitted)); *Wolf v. Lutheran Mut. Life Ins. Co.*, 18 N.W.2d 804, 809 (Iowa 1945) ("Nor will courts control or interfere in the internal management or policy of a corporation except in cases of fraud, bad faith, breach of trust, gross

soundest rule of law for the Virgin Islands because corporate decision

mismanagement or ultra vires acts on the part of the officers or stockholders." (citation omitted)); *Cron v. Tanner*, 171 Kan. 57, 229 P.2d 1008, 1013 (1951) ("It is only when the officers are guilty of willful abuse of their discretionary power or of bad faith, neglect of duty, perversion of the corporate purpose, or when fraud or breach of trust are involved, that the courts will interfere."); *Sec. Trust Co. v Dabney*, 372 S.W.2d 401, 406 (Ky. 1963) ("Absent fraud, actual or constructive, the courts will not interfere with the management of a private corporation."(citation omitted)); *McCloskey v. New Orleans Brewing Co.*, 128 LA. 197, 54 So. 738 (1911) ("This court will not readily interfere with the acts of the board of directors in the management of a corporation in the absence of a clear showing of fraud, or a breach of trust, for there is a presumption that the acts of the board of directors are for the good of the corporation."); *Rosenthal v. Rosenthal*, 543 A.2d 348, 354 (Me. 1988) ("In the absence of a showing that defendants acted primarily through bad faith or fraud, the business judgment rule prevents a finding that defendants violated their fiduciary obligations to [the plaintiff]."); *N.A.A.C.P. v. Golding*, 342 Md. 663, 679 A.2d 554, 561 (1996) (corporate decisions "are insulated from judicial review absent fraud, irregularity, or arbitrary action"); *Dunphy v. Travelers' Newspaper Ass'n*, 146 Mass. 495, 16 N.E. 426, 427 (1888) (denying relief "in the absence of any averment of fraud or bad faith, or of any facts from which fraud or bad faith must be inferred"); *Wagner Elec. Corp. v. Hydraulic Brake Co.*, 269 Mich. 560, 257 N.W. 884, 887 (1934) ("[T]his court has no right to interfere with the internal affairs of the Hydraulic Brake Company at the suit of a dissatisfied stockholder, in the absence of bad faith, fraud, or breach of trust."); *Jaques v. Missabe Elec. Co.*, 172 Minn. 303, 215 N.W. 185, 186 (1927) ("This action does not involve an act which is ultra vires, illegal, or fraudulent. The question involved is purely one of business management, with which the courts will not interfere at the instance of a minority stockholder."); *City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 523 (Miss. 2005) ("As a general rule, the courts refrain from interfering with the internal management of a corporation and do not interfere in the affairs of a private corporation in the absence of proof of bad faith or fraud on the part of those entrusted with its management." (citation omitted)); *Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 851 (Mo. 1960) ("[C]ourts will not interfere with or attempt to control the internal management or policy of a corporation except in cases of fraud, bad faith, breach of trust, gross mismanagement, or ultra vires acts on the part of the officers or directors." (citation omitted)); *System Meat Co. v Stewart*, 175 Neb. 387, 122 N.W.2d 1, 5 (1963) ("[I]n the absence of usurpation, or fraud, or gross negligence, or transgression of statutory limits, courts of equity will not interfere at the suit of dissatisfied stockholders merely to overrule the discretion of directors on questions of corporate management, policy, or business."); *Smith v. Gray*, 50 Nev. 56, 250 P. 369, 374 (1926) ("It may be conceded that the majority stockholders are bound not to act fraudulently or in bad faith, but, where the acts of the majority are neither fraudulent nor ultra vires, the minority or dissenting stockholders have no ground of complaint."); *Allen v. Newmarket Indus. Assocs.*, 95 N.H. 121, 58 A.2d 754, 756 (1948) ("While the directors are obliged to act for the best interests of their company, their actions cannot be controlled in the absence of illegality, irregularity, fraud or gross mismanagement."); *Madsen v. Burns Bros.*, 108 N.J. Eq. 275, 155 A. 28, 32-33 (N.J. Ch. 1931) ("[B]usiness and economic problems are to be considered and determined by defendant's directors, and not by the court, and that the judgment of a majority of the board of directors must prevail in the absence of fraud, ultra vires action, illegality, or a showing of mala fides or abuse of power tantamount to fraud."); *Auerbach v. Bennett*, 393 N.E.2d 994, 997 (N.Y. 1979) ("[A]bsent

495

makers "have both better information and better incentives" than courts, and "know more about business than judges do." *Rosenfield v. Metals Selling Corp.*, 229 Conn. 771, 643 A.2d 1253, 1262 (1994); *accord Barnes*, 20 Cal. Rptr. 2d at 95; *Levandusky v. One Fifth Ave. Apt. Corp.*, 75 N.Y.2d 530, 553 N.E.2d 1317, 1324, 554 N.Y.S.2d 807 (1990).

 Having established this common law principle, we may return to our consideration of the extent to which WICO's decision to award the concession agreement to BEST is subject to judicial review. Because the Legislature intended for WICO to operate as a private corporation, it can only exercise such authority if courts treat WICO's decisions as the decisions of a private corporation and exercise the level of judicial review applicable to such entities at common law. *See City of Newark v. New Jersey Turnpike Auth.*, 7 N.J. 377, 81 A.2d 705, 707 (1951) (applying a similar standard of review to "an independent public corporation especially created by the [New Jersey] Legislature to carry out legitimate and important functions of government"). Since VITA maintains that WICO's decision to award the concession agreement to BEST is unauthorized — by virtue of WICO's alleged derogation of the RFQ's requirements — judicial review of WICO's decision is appropriate here, under the standard provided by the common law.

Under this standard, VITA's challenge is meritless. VITA first claims that BEST's alleged failure to substantiate its ability to provide 300 drivers should have disqualified BEST from consideration. Under its "General Information" section, the RFQ stated that "[t]he successful [p]rovider will be selected based on its ability to make available not less than 300 licensed vehicles and to submit evidence meeting the criteria set forth here to operate under a Concession Agreement with WICO." VITA's argument assumes that an applicant could only substantiate the number of available drivers by providing a list of medallion numbers currently registered with that applicant. But the RFQ contained no such requirement. As its evidence, BEST verbally represented to the evaluation

---

evidence of bad faith or fraud . . . the courts must and properly should respect [corporate] determinations."); *Zidell v. Zidell, Inc.*, 277 Ore. 413, 560 P.2d 1086, 1089 (1977) ("The burden of demonstrating bad faith, fraud, breach of fiduciary duty or abuse of discretion on the part of the directors of a corporation rests on the party seeking judicial mandatory relief.").

committee that it "would be able to provide the adequate amount of cars" to WICO. And before WICO's board, Kerry Harrigan, BEST's manager, represented that "[d]rivers will not be a problem. We have drivers committed to joining the organization come in on a daily basis inquiring about the dock concession." This evidence satisfied both the evaluation committee and the majority of WICO's board. Since nothing in the RFQ prohibited WICO from relying on BEST's word as evidence, we are not convinced that WICO acted in an unauthorized manner. And even if the RFQ had required BEST to provide the same documentation presented by VITA, the RFQ permitted WICO to "waive informalities/technicalities, if deemed to be in WICO's best interests."

▆▆▆ VITA also claims that concerns regarding its willingness to pay the $60,000 concession fee and the ability to install credit card machines in all taxis are post hoc justifications for selecting BEST, and as such, are entitled to no deference from the court. The principle that courts owe no deference to post hoc justifications for agency decisionmaking applies under the "arbitrary and irrational" framework. *See Marco St. Croix, Inc.*, 62 V.I. at 592 ("[T]he arbitrary or irrational standard applies only to justifications provided when the decision was initially made, and . . . extrinsic evidence — such as post hoc testimony provided by agency representatives for the first time at an injunction hearing — [is] not entitled to such deference." (quoting *Tip Top Constr. Co.*, 60 V.I. at 737-38)). Even if we reviewed WICO's decision under that framework, the summary of the evaluation committee's review of BEST's and VITA's responses to the RFQ reveals that the evaluation committee considered neither factor when determining to recommend that both BEST and VITA be granted the opportunity to present to WICO's board. Rather, the issue of credit card machines and each provider's ability to pay the mandatory concession fee was only raised before WICO's full board on September 8, 2016. The record reveals that both BEST and VITA were allowed to address the board's concerns on each issue before the board decided to award the concession agreement to BEST. Consequently, VITA's contention that such considerations represent impermissible post hoc justifications for selecting BEST is without merit.

Nor does it appear that the RFQ precluded WICO from weighing these considerations. The RFQ explicitly stated that the recipient of the concession agreement "shall pay WICO the sum of SIXTY THOUSAND DOLLARS ($60,000.00) per year during the duration of the Concession

497

Agreement." Further, 40% of each applicant's score was based on "Project Understanding," a category that evaluated whether the applicant had "a thorough understanding of the requirements for the taxicab concession and the environment at the cruise ship dock." Given that WICO's board determined that the acceptance of credit cards was necessary to remain competitive with other Caribbean destinations and to cater to the millennial population, it is reasonable that the use of credit cards would be considered under the "Project Understanding" category.

 In sum, VITA did not demonstrate a reasonable probability that WICO acted in excess of its authority when it awarded the concession agreement to BEST, let alone demonstrate that WICO acted in bad faith, fraudulently, or illegally. Due to this failure, we affirm the Superior Court's conclusion that the likelihood of VITA's success on the merits weighed against the issuance of a preliminary injunction.

## 2. Existence of irreparable injury

 VITA next argues that the Superior Court erred in concluding that its potential harm was not irreparable, explaining that "the inability to fairly compete for a government contract, in and of itself, constitutes irreparable harm."[8] Because VITA did not raise this argument before the Superior Court, it is waived for purposes of this appeal. V.I.S.Ct.R. 4(h) and 22(m); see Better Bldg. Maint. of the V.I., Inc. v. Lee, 60 V.I. 740, 748 n.2 (V.I. 2014).

 Even if we were to address this argument on appeal, however, it still would not alter our conclusion in this case. Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." Yusuf, 59 V.I. at 854 (citations omitted). And although we have previously "agree[d] . . . that the ability to fairly compete for a government contract constitutes irreparable harm," Tip Top Constr. Corp. v. Gov't of the V.I., S. Ct. Civ. No. 2014-0006, 2014 V.I. Supreme LEXIS 15, at *6 n.2 (V.I. Feb. 14, 2014) (unpublished); see Rennie v. Hess Oil V.I. Corp., 62 V.I. 529, n.7 (V.I. 2015) (explaining

---

[8] VITA did not reassert on appeal its previous theories relating to economic harm caused by its loss of the concession and associated tourism decline resulting from inadequate alternative transportation services on St. Thomas. As a result, both theories are waived. V.I.S.Ct.R. 22(m) ("Issues that were . . . raised or objected to but not briefed, . . . or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal[.]").

that "all decisions of this Court, whether published or unpublished, may be cited as authority" (citation omitted)), as the moving party, VITA must make some showing that it was unable to fairly compete. *See 3RC & Co., Inc.*, 63 V.I. at 557. It has failed to do so. VITA and BEST each submitted responses to the RFQ. "The WICO management team, which consisted of three members, reviewed proposals from three groups. [That team] got it down to two organizations, [BEST] and [VITA]." WICO permitted both BEST and VITA to present their proposals to WICO's board during a September 8, 2016 board meeting. WICO's board questioned VITA about the order in which members were assigned passengers, the relationship amongst its management, the manner in which VITA dealt with drivers who failed to confirm to existing rules and regulations, and the ability of VITA to implement credit card payments — a "vital component" of the board's decision making process. The board also questioned VITA about its willingness to pay the $60,000.00 concession required by the RFQ. WICO's board subjected BEST to a similar series of questions. It inquired about BEST's organizational structure, the number of drivers BEST could provide, BEST's ability to accept credit cards in their taxis, how BEST intended to keep passengers safe, and BEST's willingness to obtain sufficient insurance coverage. As with VITA, WICO's board also addressed BEST's willingness to pay the annual $60,000.00 fee required by the RFQ. The record reveals that WICO gave VITA and BEST equal opportunities to compete at all stages of the contracting process.

But even had VITA made some showing that it was unable to fairly compete, it must also "make 'at least *some* showing that [it] is likely to succeed on the merits' in moving for a preliminary injunction." *3RC & Co., Inc.*, 63 V.I. at 555 (quoting *Marco St. Croix, Inc.*, 62 V.I. at 590 n.2. VITA did not do so. As discussed above, VITA failed to substantiate that WICO's decision was the product of bad faith, fraud, illegality, or an unauthorized action. As a result, it did not make *any* showing that it is likely to succeed on the merits. Accordingly, we affirm the Superior Court's conclusion that this factor weighed against the issuance of a preliminary injunction.

### 3. The public interest

Finally, VITA contends that the Superior Court erred in concluding considerations of the public interest militated strongly against the issuance of a preliminary injunction. The Superior Court concluded that

"the public interest will be best served by allowing WICO to exercise its business judgment and award [BEST] the bid" because "[p]art of the tourist experience is adequate taxi service for all passengers," and WICO, "as a leader in the tourism industry, determined that [BEST] is best suited to meet the growing and competitive needs of the industry and adapt to the future needs of the tourism industry[,] which is of great benefit to the Virgin Islands economy." Citing an unpublished opinion in *Tip Top Constr. Corp. v. Gov't of the V.I.*, S. Ct. Civ. No. 2014-0006, 2014 V.I. Supreme LEXIS 15 (V.I. Feb. 14, 2014), VITA argues that "the public interest is not in the 'business judgment' of the government agency but in the public confidence in the procurement process." Since VITA raises this argument for the first time on appeal, it is waived. V.I.S.Ct.R. 4(h); *see Better Bldg. Maint. of the V.I., Inc.*, 60 V.I. at 748 n.2.[9]

██ ██ Even if we were to address this argument on appeal, it is nonetheless meritless because VITA has wholly failed to substantiate its claim that WICO's award of the concession agreement to BEST has eroded public confidence in the procurement process. *See 3RC & Co., Inc.*, 63 V.I. at 550 ("[T]he party seeking an injunction [bears] the burden of proof as to all four factors." (quoting *Appleyard v. Gov. Juan F. Luis Hosp. & Med. Ctr.*, 61 V.I. 578, 591 (V.I. 2014))). And although we have affirmed that "public confidence in the procurement process is imperative in a democratic society," *Tip Top Constr. Corp.*, 2014 V.I. Supreme LEXIS 15 (quoting *C&C/Manhattan v. Gov't of the V.I.*, 40 V.I. 51, 71 (V.I. Super. Ct. 1999)), the public has a similar interest in permitting the contracting entity to exercise its judgment when determining with whom to contract. *See Queen City Constr., Inc. v. City of Rochester*, 604 N.W.2d 368, 379 (Minn. Ct. App. 1999) (concluding that the denial of an injunction to prohibit a city from entering into a contractual arrangement served the public interest because the "power to award contracts is entrusted to the city's discretion, and a court should be wary to interfere"

---

[9] In its motion for a temporary restraining order and preliminary injunction, VITA argued that the public interest would be served by an injunction because "lack of experience will assuredly cause a collapse of the tourist experience[,] leading to poor customer experiences and send ripples through the tourist economy." VITA further argued that BEST's alleged failure to "have the necessary vehicles to accommodate handicapped or otherwise disabled cruise ship passengers would be an embarrassment to this territory[,] making it impossible for disabled cruise ship passengers to disembark the ship in St. Thomas." VITA did not reargue these claims on appeal.

with the exercise of that discretion (citations omitted)); *see also Groves v. Dept. of Corr.,* 811 N.W.2d 563, 568 (Mich. Ct. App. 2011) ("Litigation aimed at second-guessing the exercise of discretion by the appropriate public officials in awarding a public contract will not further the public interest; it will only add uncertainty, delay, and expense to fulfilling the contract." (citations omitted)). As the Superior Court observed, WICO, as a leader in the tourism industry, determined that BEST is best suited to meet its needs and adapt to the future needs of the tourism industry, which is of great benefit to the Virgin Islands economy. We agree with the Superior Court's conclusion that the public interest will be best served by allowing WICO to exercise its business judgment and award BEST the concession agreement, and accordingly, we affirm the Superior Court's conclusion that the 'public interest' factor weighs against enjoining WICO from contracting with BEST.

## IV. CONCLUSION

VITA has standing to challenge WICO's decision to award the concession agreement to BEST as a taxpayer pursuant to section 80 of title 5, and because VITA's alleged injury is capable of repetition yet evading review, WICO's execution of the concession agreement with BEST does not moot VITA's challenge. But VITA failed to carry its burden of demonstrating a clear entitlement to an injunction prohibiting WICO from awarding the concession to BEST. Accordingly, we affirm the Superior Court's October 26, 2016 order.